**FUKAYA TRADING COMPANY, S.A.**

v.

**EASTERN MARINE CORPORATION and the SS EASTERN ARGO.**

No. 7105.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Jan. 22, 1971.

Moise S. Steeg, Jr., Steeg & Shushan, New Orleans, La., for plaintiff.

William S. Stone, Deutsch, Kerrigan, & Stiles, New Orleans, La., Morton Zuckerman, Dunn & Zuckerman, New York City, for defendants.

HEEBE, District Judge.

On a previous day the defendant brought on four motions for hearing: (1) to vacate the *ex parte* order of this Court made May 25, 1970, for the deposition of the arbitrators; (2) to accelerate the motion of Fukaya to vacate the arbitration award and to deny the motion; (3) to vacate the *ex parte* order of this Court made May 25, 1970, staying enforcement of the arbitration award; and (4) to enforce the arbitration award date, April 17, 1970, and to have judgment entered thereon.

On May 25, 1970, the attorneys for the plaintiff (charterer) noticed the depositions of the three arbitrators of the dispute underlying this lawsuit. The defendants (shipowners) oppose the depositions on the theory that there is no basis in law for deposing arbitrators concerning their award. Fukaya concedes that it cannot inquire into the "reasoning" of the arbitrators but Fukaya urges that it can inquire into their "motives" to determine if they acted with prejudice.

5 Am.Jur.2d, Arbitration and Award, § 187, states:

"It is the general rule that an arbitrator may not by affidavit or testimony impeach his own award or show fraud or misconduct on the part of the arbitrators. However, a dissenting arbitrator, the award not being his, may testify as to bias, partiality, or other misconduct of the arbitrators who render the award, the same as any other witness."

The plaintiff asserts that there is precedent for deposing arbitrators and cites Continental Materials Corp. v. Gaddis Mining Co., 306 F.2d 952 (10th Cir. 1962). But that diversity case construing Colorado law contained objective evidence indicating the possible misconduct of an arbiter. The losing arbitrating party contended that the arbitrators improperly delegated their responsibilities. It introduced bills for engineering services (sent to both litigants in the arbitration) which indicated that a third party, an engineer, was conducting much of the work in connection with the arbitration. There, the court allowed lengthy cross examination of one of the arbitrators to determine whether this arbitrator had made his own decision or had blindly relied on the opinion of the engineer.

The defendants rely on Gramling v. Food Machinery and Chemical Corp., 151 F.Supp. 853 (W.D.S.C.1957). There, the arbitration agreement provided that the award was to be made on instructions given by the district judge and that this award was to be non-appealable. The disappointed arbitrating party attempted to vacate the arbitration award on the theory that the award effectively constituted legal fraud in that the arbitrators had violated the court's instructions in arriving at the amount of plaintiff's loss. To substantiate this charge, the losing party tendered the affidavits of two of the six arbitrators and moved for an order requiring all six arbitrators to appear in court for examination regarding the method of arriving at their award. The court would not allow the arbitrators to attack their award through their own testimony. The court stated

"The authorities generally hold that the testimony of an arbitrator tending to impeach the award is incompetent and should be rejected * * * (cases cited).

\* \* \* \* \* \*

"The parties in this case stipulated for and obtained the judgment of arbitrators. In my opinion, it would be most unfair to the arbitrators to order them to come into court to be subjected to grueling examinations by the attorneys for the disappointed party and to afford the disappointed party a 'fishing expedition' in an attempt to set aside the award. To do this would neutralize and negate the strong judicial admonitions that a party who has accepted this form of adjudication must be content with the results." (cases cited). At 860–861.

In the case at bar, the arbitrators were unanimous in their award. Since only dissenting arbitrators are allowed to impeach their award, there is no basis for allowing it in this case. Nor has any objective basis been advanced, such as the engineer's bills in *Continental Materials Corp.*, *supra*, which could serve as a basis for allowing deposition.

It is further stated in 5 Am.Jur.2d, Arbitration and Award, § 187, that:

"In some jurisdictions testimony of arbitrators is admissible to show the matters considered by them and the conclusions reached thereon, and to prove mistake as a result of which their award is made to operate in a way they did not intend."

But even conceding, without deciding, that the above principle is applicable to this case, Fukaya is not helped by it. The Court is in possession of the transcript of the entire arbitration proceeding, the submission agreement and the unanimous award of the arbitrators. Thus, a mere examination of the record in this case will show "the matters considered by them and the conclusions reached by them"; nothing more could

be added by depositions. Nor is there anything to indicate that the arbitrators made a "mistake as a result of which their award is made to operate in a way they did not intend." From a reading of the award, it is obvious that the arbitrators, specialists in maritime trade, have effected the result they intended and have not blundered.[1]

Thus, finding no authority in law or equity to allow the depositions of the arbitrators, we must vacate our order allowing the depositions.

The remaining motions bear on the single question of enforcing or vacating the arbitration decree dated April 17, 1970.

■ The court's jurisdiction to enforce or vacate an arbitration award is provided in 9 U.S.C. §§ 9, 10. Under § 10, the district court where the arbitration was held is the proper court to vacate the award. At first blush, the district court in New York would be the court having jurisdiction. However, once one party to the arbitration comes into a court of proper jurisdiction under 9 U.S.C. § 9 to enforce the award, that same court has jurisdiction to entertain defenses and, in proper cases, to vacate the award. The Hartbridge, 57 F.2d 672 (2d Cir. 1932); Catz American Co., Inc. v. Pearl Grange Fruit Exchange, Inc., 292 F.Supp. 549 (S.D.N.Y.1968). Thus, this Court has jurisdiction to entertain Fukaya's motion to vacate the award since Eastern Marine asks this Court to enforce the award.

The defendants have applied to this Court for confirmation of the arbitration award under 9 U.S.C. § 9, which states "\* \* \* the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." The

---

1. Am.Jur. 2 cites Black v. Woodruff, 193 Ala. 327, 69 So. 97 (1915), for the proposition that arbitrators can give testimony to attack their award where the arbitrators intend one effect and the award, as written, gives a different effect. In *Black*, however, all the arbitrators were "\* \* \* unaccustomed to business of that nature [under arbitration] and of limited education, one of them unable to write his name \* \* \*." (At 99) *Black*, then, is especially inappropriate to *Fukaya* since the three arbitrators here are literate, well educated and specialists in maritime trade, particularly chosen for their expertise.

plaintiff, Fukaya, seeks to vacate the award under 9 U.S.C. § 10. Fukaya alleges three grounds under that section in seeking to set aside the award: (1) the arbitrators manifestly disregarded the law which they knew and recognized as applicable; (2) the arbitrators showed evident partiality in favor of Eastern Marine Corporation, the shipowner; and (3) the arbitrators either deliberately or as a result of evident partiality misconstrued the facts.

Initially, it must be pointed out that where parties have agreed to arbitrate and that such arbitration be final, the role of this court under Title 9 is limited to ascertaining whether there exists one of the specific grounds in 9 U.S.C. § 10 for vacating an award. Saxis S.S. Co. v. Multifacs International Traders, Inc., 375 F.2d 577 (2d Cir. 1967). Once the court finds that any grounds exist under 9 U.S.C. § 10, then the court will set aside the award because it is the intent of Congress that both parties to an arbitration are entitled to an *impartial* arbitration. Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301, reh. den. 393 U.S. 1112, 89 S.Ct. 848, 21 L.Ed.2d 812 (1968). However, 9 U.S.C. § 10 is neither designed to dilute the general advantage of speedy and effective resolution of disputes by arbitration nor to weaken the traditional reluctance with which courts view efforts to re-examine awards. Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594 (3rd Cir. 1968), cert. den. 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365. Thus, the court's function in confirming or vacating any arbitration award is severely limited in order not to frustrate the purpose of avoiding litigation by resorting to arbitration. Shahmoon Industries, Inc. v. United Steelworkers of America, AFL–CIO, 263 F.Supp. 10 (D.N.J.1966) ; see also, Saxis S.S. Co. v. Multifacs International Traders, Inc., *supra*; Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805 (2d Cir. 1960) ; cert. den. 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727.

Fukaya's main argument for vacating the award is that the arbitrators manifestly disregarded the pertinent law and that such manifest disregard for the law also involved disregard for facts and indicates "evident partiality" on the part of the arbitrators.

That part of the arbitration award which is in dispute here is Item #1, *viz.*, whether lay days for the vessel began on January 14, 1965, at 0700 (as contended by defendant shipowners) or on February 13, 1965, at 0700 (as contended by plaintiff charterer). Because of a strike by the I.L.A. in the Port of New Orleans, no pilot was permitted access to the vessel to bring it to a berth until February 11, 1965. The charterers argued that the S/S Eastern Argo was not an "arrived ship" until placed at the Southern Scrap wharf and submitted six pages of legal memoranda to substantiate their position.[2] They concluded that, as a matter of law subject to no doubt or contrary interpretation or application, the Eastern Argo was not an arrived ship until placed at the berth time charterers had a right to designate.

The arbitrators came to a different conclusion however. Quoting from the award:

> "It is the opinion of the arbitrators that the Charterers designated a berth that was inaccessible to the Owners and that an alternate berth or wharf in the port area should have been nominated by the Charterers * * *. The Charter Party contained no strike clause under which the Charterers

2. Poor, Charter Parties and Ocean Bills of Lading, §§ 35, 38 (5th Ed. 1968) ; 3 Carver, British Shipping Laws, Carriage by Sea, §§ 1261, 1263, 1271 (11th Ed. 1963) ; Summerskill, Laytime, 106 (1966 Ed.) ; Scrutton, Charter Parties and Bills of Lading, Arts. 29, 40 (17th Ed. 1964) ; L. N. Dantzler Lumber Co. v. Churchill, 136 F. 560 (5th Cir. 1905) ; The St. Bernard, 105 F. 994 (S.D.N.Y. 1901).

might have been afforded any relief * * *. [T]he only reason the vessel was not afforded pilotage to bring her to the designated berth was the strike in the port by the I.L.A. This, in itself does not, in the arbitrators' opinions, excuse the time-charterers from their inherent obligations to provide another berth or place *within* the directive of the Charter Party—to wit—'*Vessel to be placed at the disposal of the Charterers at New Orleans, Louisiana * * *.*' (Emphasis added). The arbitrators having the foregoing opinions therefore consider that the reasonable time for the Charterers to have designated another berth or place to which the vessel could have proceeded to be forty-eight (48) hours * * *."

Thus, the arbitrators ruled that lay days were to commence as of 0700 on January 16, 1965.

Fukaya claims that the arbitrators demonstrated evident partiality in making the award by finding that (1) only the designated berth was affected by the I.L.A. strike and that Fukaya had an opportunity to designate another berth in New Orleans but refused to do so and (2) by ignoring the alleged fact that the Eastern Argo could have been brought to its berth had the ship been taken via the Intercoastal Canal instead of waiting for a pilot to navigate it to the berth via the Industrial Canal.

A reading of the award shows that the arbitrators did not accept as a fact, but rather as conjecture or argument, the claim by the charterers that the vessel could have been berthed had it been piloted through the Intercoastal Canal. There is nothing in the award which clearly states whether the arbitrators believed only the Southern Scrap Dock was being picketed or whether the entire port was strikebound. It might be reasonable to assume that the entire port was strikebound, but this Court should not take judicial notice of a fact which has been the subject of dispute in arbitration. Further, there is an affidavit

in this record which indicates that the Eastern Argo was not allowed to go to its designated berth because non-union stevedores might have loaded the ship there and broken the strike; and that the ship might have been allowed to proceed to another berth where the I.L.A. was more sure that scab labor would not be used. These factual disputes raised before and during the arbitration are better decided by the arbitrators, and this Court will not seek to change their findings.

The issue then resolves itself to whether the arbitrators manifestly disregarded the law or not. An arbitration award is subject to review by this Court and will be vacated only if the award was made in manifest disregard of the law. Trafalgar Shipping Co. v. International Mill Co., 401 F.2d 568 (2d Cir. 1968). A "manifest disregard of the law" which would authorize the setting aside of an arbitrators' award may be present when the arbitrators understand and correctly state the law but proceed to disregard it. San Martine Compania de Navegacion, S.A. v. Saguenay Terminals, Ltd., 293 F.2d 796 (9th Cir. 1961). Fukaya argues that the arbitrators manifestly disregarded the law when they concluded the Eastern Argo was an arrived ship before it was placed at the berth the charterers had a right to designate. Moreover, as there was no other reasonably accessible berth in New Orleans until the end of the I.L.A. strike, they also disregarded the law in concluding that Fukaya was obligated to designate another berth.

The shipowners argue and correctly point out that arbitration awards cannot be set aside on grounds of erroneous findings of fact or misinterpretation of law. Kirschner v. West Co., 247 F.Supp. 550 (E.D.Pa.1965), aff'd 3 Cir., 353 F.2d 537, cert. den. 383 U.S. 945, 86 S.Ct. 1202, 16 L.Ed.2d 208 (1966). See also, Saxis S. S. Co. v. Multifacs Intern. Traders, Inc., *supra*; Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A., 312 F.2d 299 (2d Cir. 1963), cert. den.

373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705; San Martine Compania de Navegacion, S.A. v. Saguenay Terminals, Ltd., *supra*; Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805 (2d Cir. 1960), cert. den. 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727.

It has been held that if an award is within the submission agreement and it contains the honest decision of the arbitrators after a full and fair hearing, a court of equity will not set it aside for error, either in law or in fact. Burchell v. Marsh, 58 U.S. (17 How.) 344, 15 L. Ed. 96. Some cases have held the arbitrators may base their decision on principles of justice and equity, and in doing so may reject a claim that a party might successfully have asserted in a judicial action. Sapp v. Barenfeld, 34 Cal.2d 515, 212 P.2d 233; Koepke v. E. Liethen Grain Co., 205 Wis. 75, 236 N.W. 544.

Reading the award, it appears that the arbitrators, if they intended to rely on legal principles, relied on the following:

1) Reasonable efforts and cooperation must be evidenced by the parties to a contract,

2) Before a vessel can be considered an "arrived ship" it must be at the berth where the charterer, in accordance with his charter-given right, designates,

3) The right to designate a berth must be exercised reasonably,

4) Mutual cooperation was necessary to implement the conditions for delivery of the vessel under the time charter,

5) The charter party contained no strike clause under which the charterers might have been afforded any relief,

6) The time charter delivery clause which reads as follows:

"Vessel to be placed at the disposal of the Charterers at New Orleans, Louisiana, Owners to give five (5) days notice of readiness in such dock or at such wharf or place * * * as the Charterers may direct. If such dock, wharf or place be not available, time to count as provided for in Clause No. 5."

Clause No. 5 provides for commencement of laytime at 7:00 a.m. next working day unless charterers used the vessel earlier, based on customary conditions.

The crucial question now becomes whether, in the absence of a strike clause, the loss will fall to shipowner or charterer. The arbitrators, without citing any legal authority, decided the loss would fall on the charterers, if within forty-eight hours after arrival in a strikebound port, the charterer did not designate another berth. It seems the arbitrators considered the owners had fulfilled their part of the contract by delivering the ship to the port and that there was (1) no strike clause to relieve the charterers of their liability and (2) the charterers were in some way responsible for the Eastern Argo not being allowed to be berthed.

▪ Under this charter party, the charterers had a right to designate a berth. Under established law, the boat was not an "arrived ship" until it reached the berth named by the charterer. Poor, Charter Parties and Ocean Bills of Lading, § 35. Here, the charterer named a berth which was being picketed by striking longshoremen. In effect, he designated a berth which was unavailable. Under the law, a charterer has a right to designate a berth, but he must exercise that right reasonably. 3 Carver, British Shipping Laws, §§ 1271, 1272; see St. Ioannis Shipping Corp. v. Zidell Explorations, Inc., 336 F.2d 194 (9th Cir. 1964); S. S. Rutherglen Co. v. Howard Houlder, 203 F. 848 (2d Cir. 1913). The berth may be unavailable temporarily, and the choice will still be reasonable, but if the berth is never available, the choice becomes unreasonable. We are not prepared to say that the arbitrators, in deciding that under

these circumstances the charterer had to designate an available berth within forty-eight hours, demonstrated a "manifest disregard for the law." Absent such disregard, we are precluded from vacating the arbitration award.

In considering the decision of the arbitrators, two further factors must be considered. First, until Tharsis Sulphur Company v. Morel, 2 QB 647 (1891), the law was unclear over whether a charterer was entitled to name a berth which was not at once available. It is still not certain whether that case is controlling today, or whether it ever was controlling in the United States. See Poor, Charter Parties and Ocean Bills of Lading, § 35. Moreover, both plaintiff and defendant, in their arbitration agreement, specifically stipulated that the arbitrators were to be "men of commerce" and by implication not admiralty lawyers. For all the above reasons, this Court is not prepared to say that these three arbitrators unanimously acted in "manifest disregard of the law."

For the foregoing reasons, it is the order of the Court that the depositions of Messrs. Joseph Simms, Jeremiah W. Jenks and Eric A. Skoglund, previously set, be, and the same are hereby, set aside and prohibited.

It is the further order of the Court that its previous *ex parte* order of May 25, 1970, staying enforcement of the arbitration decree be, and the same is vacated and set aside.

It is the further order of the Court that Fukaya's motion to vacate the arbitration award be, and the same is hereby, accelerated for hearing, and the hearing having been held, the motion to vacate is denied.

It is the further order of the Court that the defendant's motion to enforce the arbitration award, be, and the same is hereby, granted.

Let judgment be entered accordingly.