CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA DE PUERTO RICO, demandante y recurrida, *v.* HAMPTON DEVELOPMENT CORP., demandada y peticionaria.

*Número:* O-80-721      *Resuelto:* 28 de enero de 1982

*Telesforo Rosa Resto* y *Ronald L. Rosenbaum,* de *Woods & Woods,* abogados de la peticionaria; *Pedro Miranda Corrada,* de *Rodríguez Padilla y Fortuño,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Evaluamos el dictamen del tribunal de instancia que autoriza, en una impugnación de un laudo, la toma de la deposición de uno de los árbitros. Este incidente tiene el siguiente trasfondo fáctico y procesal:

El 22 de diciembre de 1970 la Corporación de Renovación Urbana y Vivienda (C.R.U.V.) y Hampton Development Corp. of Puerto Rico (Hampton) suscribieron un contrato para la construcción del proyecto identificado VBC-61, Residencial las Orquídeas. Como resultado de serias discrepancias sobre la calidad y resistencia sísmica de los edificios —y sobre quién recaía contractualmente la responsabilidad de satisfacer los costos para cumplir con ciertos requisitos de la Junta de Planificación y otras divergencias— surgieron varios litigios. Tras años de debates forenses[1] ambas acordaron someter a arbitraje sus disputas. A tal efecto el 5 de diciembre de 1977 otorgaron un convenio (*Arbitration Agreement*), que en lo pertinente estipuló una junta compuesta por tres árbitros —uno seleccionado por cada parte y el tercero por mutuo acuerdo. La C.R.U.V. nombró al Ing. Antulio Pietri, Hampton al abogado norteamericano David A. Cobin y como tercero escogieron al Lcdo. Fausto Ramos Quirós, ex juez superior. Se dispuso, además, que el laudo sería *final, firme e inapelable.*

Previas vistas al efecto, luego de un análisis de la evidencia, el 21 de enero de 1980, por unanimidad, los árbitros emitieron su laudo favorable a Hampton,[2] ascendente a $13,949,637.18.

Así las cosas el 4 de junio de 1980, Hampton presentó moción para confirmar judicialmente el laudo. El 11 de abril de 1980 la C.R.U.V. lo impugnó aduciendo para ello, las siguientes razones: (a) que por lo menos uno de los árbi-

---

[1] Como partes interesadas en los casos figuran la National Insurance Company —fiadora de la C.R.U.V.— y la Insurance Company of North America.

[2] Durante el período de las vistas nuevamente las partes reiteraron por escrito el carácter final, firme e inapelable del laudo.

tros se reunió en varias ocasiones con Hampton para discutir el caso; (b) que hubo corrupción o parcialidad de parte de los árbitros ya que emitieron un laudo totalmente opuesto a *toda* la evidencia pericial presentada; (c) que por lo menos uno de ellos se ha expresado por escrito de tal manera que "no deja lugar a dudas en cuanto a su confusión [*sic*]" pues dijo que su determinación se basó en testimonio pericial cuando la realidad es que ello fue en forma completamente contraria; y (d) que el árbitro Antulio Pietri tenía un "serio conflicto de intereses como consecuencia de formar parte o tener interés en una corporación que le estaba haciendo reclamaciones económicas a [C.R.U.V. . . .] que eventualmente fueron a los tribunales y culminaron recientemente en una sentencia de más de $100,000.00."

Posteriormente la C.R.U.V. notificó la toma de una deposición al Ing. Pietri a lo cual se opuso Hampton. El tribunal de instancia accedió y acordamos examinar su procedencia mediante el trámite de mostración de causa.

## I

■ La Ley de Arbitraje de Puerto Rico, Núm. 376 de 8 de mayo de 1951, según enmendada, 32 L.P.R.A. sec. 3201 *et seq.*, constituye el andamiaje legal que gobierna la solución del caso. A su amparo, todo *convenio* de arbitraje "será válido, exigible e irrevocable salvo por los fundamentos que existieran en derecho para la revocación". Y como únicos motivos de revocación de un *laudo* reconoce los siguientes: (a) si se obtuvo mediante corrupción, fraude u otro medio indebido; (b) si hubo parcialidad o corrupción evidente de los árbitros o cualquiera de ellos; (c) si actuaron erróneamente al rehusar posponer la vista luego de mostrarse causa justificada para ello, o al rehusar oír evidencia pertinente a la controversia, o cuando incurrieren en cualquier error que perjudique los derechos de cualquiera de las partes; (d) si se extendieren en sus funciones o el laudo emitido no resolviera de manera final y defini-

tiva la controversia; y (e) si no hubo sumisión o convenio de arbitraje válido y el procedimiento se inició sin diligenciar la notificación de intención de arbitrar.

La impugnación de la C.R.U.V. intenta enmarcarse en las causales (a), (b) y (c). Bajo esas premisas obtuvo autorización judicial para tomar la deposición. Ante nos reitera su procedencia adelantando la tesis de que, en síntesis, de haberse hecho alegaciones específicas de corrupción y conducta impropia en cuanto a uno de los árbitros —proveyendo la ley tales causales para invalidarlo— es lógico que para probar la existencia de las mismas, se provean los medios sobre descubrimiento de prueba, inclusive el uso de deposiciones.

Por su parte, Hampton se opone argumentando que la norma jurisprudencial prevaleciente impide tal trámite para evitar expediciones de pesca por un litigante perdidoso. Aunque reconoce que se ha permitido tal descubrimiento cuando "existe evidencia objetiva de conducta impropia" por el árbitro, expone que en el caso de autos tal prueba no está disponible para el proceso decisorio en esta etapa apelativa pues las contestaciones a interrogatorios suplidas por C.R.U.V., con posterioridad a haberse perfeccionado ese *certiorari*, es materia que no puede ser tomada en consideración. Finalmente enfatizan en el carácter final, firme e inapelable del laudo.

■■■ En *Autoridad Sobre Hogares* v. *Tribl. Superior*, 82 D.P.R. 344, 355 (1961), establecimos la doctrina de que los principios relativos al alcance y límites de la revisión judicial de un laudo arbitral son los que rigen bajo la ley de arbitraje federal y en algunas jurisdicciones estaduales. Siguiendo dicha orientación allí resolvimos que la doctrina jurisprudencial admite —en la dimensión procesal— que los árbitros *no* están compelidos a formular determinaciones de hecho o conclusiones de derecho, *Autoridad Sobre Hogares*, supra, pág. 361; tampoco expresan "las razones de su fallo, ni vienen obligados a sustanciar la prueba bajo

juramento, ni a tomar la misma por escrito y hacer un récord", *Autoridad Sobre Hogares*, supra, págs. 361, 362. De igual modo, no vienen obligados a emitir sus laudos conforme a derecho, salvo pacto expreso en contrario —*Rivera* v. *Samaritano & Co., Inc.*, 108 D.P.R. 604, 609 (1979). Respecto los parámetros de la revisión judicial, decidimos que no es revisable en su fondo el error de los árbitros en la apreciación de los hechos o en las normas de un derecho independientemente del sentir concurrente o disidente del foro judicial, *Autoridad Sobre Hogares*, supra, págs. 358–359; no son revisables tampoco señalamientos de errores que conllevan considerar en sus méritos cuestiones de hecho sobre la interpretación de un contrato y la prueba recibida por los árbitros —*Autoridad Sobre Hogares*, supra, pág. 363.

▪ Como resultado de las normas expuestas, aflora un principio rector: está fuera del ámbito del descubrimiento de prueba el inquirir sobre el proceso deliberativo mental y decisorio del árbitro. La cuestión es de importancia cardinal y reviste de gran seriedad a la articulación de una política judicial encaminada a promover estabilidad, destreza y finalidad de los procedimientos y laudos de arbitraje como medios "de resolver las controversias rápidamente, sin los costos y demoras del proceso judicial". *Rivera*, supra, pág. 609.

▪ Como corolario, son evidentes las razones que apoyan la regla general imperante de que el testimonio escrito o verbal de un árbitro, salvo la expresión disidente o explicativa en ocasión de emitirse el laudo, no es admisible para fines de impugnación de un laudo y, como consecuencia, está vedada la toma de deposiciones. Se considera que debe protegerse a los árbitros de una expedición de pesca del litigante perdidoso y también del capricho del propio árbitro quien con cambiar su parecer daría comienzo, no finalidad, a la litigación. *Fukaya Trading Company, S. A.* v. *Eastern Marine Corp.*, 322 F.Supp. 278

(1971); *Matter of Martin Weiner Co.*, 155 N.Y.S.2d 802 (1956); *De Frayne* v. *Miller Brewing Co.*, 444 F.Supp. 130 (1978); *Gramling* v. *Food Machinery and Chemical Corp.*, 151 F.Supp. 853 (1957); *Admissibility of Affidavit or Testimony of Arbitrator to Impeach or Explain Award*, 80 A.L.R.3rd 155 (1977). Únicamente por vía de excepción y con carácter limitado ante alegaciones sobre conflicto de intereses o conducta impropia y la existencia de suficiente evidencia objetiva que permita al foro judicial evaluar preliminarmente los méritos potenciales de tales alegaciones, se ha intimado que se acepte la toma de deposiciones. *Fukaya Trading Company*, supra.

## II

Al confrontar los principios antes expuestos con las alegaciones y posiciones de las partes, opinamos que no se justifica la deposición autorizada en el caso de autos. Nos explicamos. Primeramente se trata de un laudo en que las partes pactaron en dos ocasiones su carácter final, firme e irrevocable. El convenio no exigió que se transcribieran los procesos como tampoco que se formularan determinaciones de hecho o conclusiones de derecho; tampoco que éste fuera acorde a derecho. Hemos visto que existe un interés legislativo, rubricado por el poder judicial, de abstenerse a entrar a dilucidar en su fondo los méritos sobre errores en la apreciación de la prueba e interpretación de los hechos. La tendencia jurisprudencial mayoritaria es contraria a permitir este tipo de investigaciones —deposiciones— salvo que su necesidad quede ampliamente demostrada y ello sea la sola avenida disponible. Hasta el presente en el caso que nos ocupa, excepto las alegaciones sobre conflicto de interés basados en que Pietri pertenecía a una entidad corporativa (A & P General Contractors, Inc.) que demandó y obtuvo una sentencia contra la C.R.U.V. en el caso civil Núm. 79-1810, ante el Tribunal Superior, Sala de San Juan, las otras alegaciones o razones aludidas para anular

el laudo no han sido sustanciadas. Esa relación o situación, *por sí sola*, no podría caracterizarse como corrupta o indicativa de parcialidad en el voto del árbitro Pietri, ni sería suficiente para apartarnos de la doctrina contra el uso de deposiciones. Tiene todos los indicios de una expedición de pesca. Ante esa realidad se imponen otras alternativas a la toma de la deposición. La C.R.U.V. puede solicitar y el tribunal respaldar la toma de deposiciones a otras personas integrantes de la A & P General Contractors, Inc. También puede presentar prueba de carácter documental al efecto.

Finalmente, pesa en nuestro ánimo que el panel de árbitros quedó constituido a base de que cada parte seleccionó uno y el tercero por ambas. Esta mecánica les brindó la oportunidad de, individualmente, escoger aquella persona que a su juicio era la más competente e idónea para juzgar su causa, siendo realmente un factor importante en el proceso decisorio el tercer árbitro optado por ambas partes. Advertimos que, en el caso de autos, el árbitro Pietri fue seleccionado precisamente por la parte que ahora lo impugna, la C.R.U.V. Ésta no cuestiona persuasivamente la integridad y razón de decidir de los dos árbitros restantes.

Por los fundamentos expuestos *se dictará sentencia que expida el auto y deje sin efecto la deposición autorizada. Se ordenará la continuación de los procedimientos en el tribunal de instancia compatibles con lo resuelto.*