EMILIO FEBUS y OTROS, demandantes y recurridos, *v.* MARPE
CONSTRUCTION CORPORATION, demandada y recurrente.

*Número:* RE-93-105          *Resuelto:* 25 de febrero de 1994

*Antonio Moreda Toledo*, de *Moreda & Moreda*, abogado de los recurrentes; *Jorge Vélez Nieves*, abogado de los recurridos.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Mediante una demanda presentada el 30 de junio de 1989, los demandantes alegaron el incumplimiento por parte de la demandada con la realización de una obra según pactada. También reclamaron una suma en concepto de daños como penalidad por el atraso, por los trabajos dejados de realizar, por los trabajos realizados deficientemente y por la pérdida de ingreso.

La compañía constructora demandada, MARPE Construction Corp. (en adelante MARPE), al contestar presentó una reconvención donde reclamó el pago de varias sumas de dinero alegadamente adeudadas por trabajos realizados.

Luego de un extenso descubrimiento de prueba y una serie de trámites procesales, las partes acordaron que las controversias fueran sometidas a arbitraje. Así se lo solicitaron al tribunal. Éste accedió, y el árbitro rindió su laudo el 28 de septiembre de 1992.

Luego de examinado el laudo, el tribunal lo hizo formar parte de la sentencia y ordenó al dueño de la obra a pagarle a MARPE la suma de doscientos cincuenta y cuatro mil novecientos siete dólares con siete centavos ($254,907.07), incluyendo el seis por ciento (6%) de interés computado hasta el mes de octubre de 1992. Los honorarios del árbitro, ascendentes a doce mil dólares ($12,000), fueron divididos entre ambas partes. La sentencia fue notificada el 16 de octubre de 1992.

Los autos originales reflejan que, oportunamente, el 4 de noviembre de 1992 la parte demandante recurrida presentó dos (2) mociones: una de reconsideración[1] y otra en la que solicitaba la modificación y corrección del laudo de arbitraje. En cuanto a los fundamentos, la moción de reconsideración hacía referencia a la moción sobre modificación del laudo. El tribunal, aparentemente, no se percató de que se había presentado la moción que solicitaba la modificación del laudo de arbitraje, y el 6 de noviembre de 1992 le ordenó a la parte demandante recurrida someterla y señaló una vista para el 23 de diciembre de 1992. El 24 de noviembre de 1992 la parte demandante volvió a someter la moción.

El 5 de febrero de 1993 el tribunal dictó una resolución en la cual expresó que luego de considerar los escritos y los argumentos vertidos durante la vista, así como la prueba documental sometida y el expediente, modificaba y corre-

---

[1] Los quince (15) días que establece la Regla 47 de Procedimiento Civil, 32 L.P.R.A. Ap. III, como término jurisdiccional para solicitar reconsideración vencieron el 31 de octubre de 1992. Este día fue un sábado. Debido a las elecciones generales el lunes 2 y martes 3, los tribunales permanecieron cerrados; por tal razón, el próximo día hábil fue el miércoles 4 de noviembre de 1992.

gía el laudo. Le ordenó al dueño de la obra a pagarle al contratista MARPE la suma de ciento veinte mil trescientos treinta y ocho dólares con sesenta y seis centavos ($120,338.66), más los intereses al 31 de enero de 1993.

A continuación resumimos las modificaciones y correcciones hechas por el tribunal:

1. El tribunal determinó que surgía del laudo la ausencia de intereses en las partidas concedidas a la parte demandante, a pesar de concederlos a la parte demandada. Ante este trato, que consideró discriminatorio, procedió a computarlos.

2. Aumentó de ciento diez mil setecientos cincuenta dólares ($110,750) a ciento setenta y cuatro mil dólares ($174,000) el monto de las multas por atraso en la entrega del proyecto. Al añadirle los intereses computados por el tribunal, la suma del total adeudado por multas alcanzó a doscientos un mil ochocientos cuarenta dólares ($201,840).

3. Modificó la reclamación del contratista por las órdenes de cambio del proyecto. A base de su análisis de dos órdenes no concedidas, la 14 y 15, las descontó por lo que modificó de cuarenta mil quinientos diez dólares ($40,510) a treinta y cinco mil noventa y seis dólares con veintinueve centavos ($35,096.29) la suma concedida al contratista. Ante ello determinó que existía una diferencia de cinco mil cuatrocientos trece dólares con setenta y un centavos ($5,413.71) a favor de la parte demandante.

4. Eliminó la partida de treinta y cinco mil setecientos veinticuatro dólares ($35,724) concedida al contratista por la orden de cambio Núm. 17. Concluyó que la reclamación era unilateral, incumpliendo así el requisito del contrato que exigía el concurso del dueño y del arquitecto.

5. Las sumas concedidas a las partes, luego de la modificación del laudo, son las siguientes:

(a) *Reclamaciones del Dueño*:

1. Penalidad por atraso             $174,000.00

2. Deficiencias y trabajos realizados por el dueño ................................. 36,200.00

3. Trabajos no conformes a lo pautado ... 10,000.00

Total------------------------------ $220,200.00

4. Intereses al 6% anual desde mayo de 1990 hasta el 31 de enero de 1993 ... $ 35,232.00

Total Reclamaciones---------------- $255,432.00

(b) *Reclamaciones del Contratista (MARPE)*:

1. Certificación Núm. 14 ............... $ 28,758.60

2. Ajuste en el Contrato ............... 86,000.00

3. Concepto de Retenido ............... 169,400.00

4. Concepto de Ordenes de Cambio 2–16 ................................... 30,386.40

5. Orden de Cambio 19 ................ 5,919.00

6. Orden de Cambio 20 ................ 3,476.26

Total------------------------------ $323,940.26

7. Intereses al 6% anual desde mayo de 1990 hasta el 31 de enero de 1993 ... $ 51,830.40

Total Reclamaciones---------------- $375,770.66

La diferencia en el total de ambas reclamaciones es de ciento veinte mil trescientos treinta y ocho dólares con sesenta y seis centavos ($120,338.66) a favor del contratista MARPE. El tribunal ordenó el pago de esta cantidad. Esta resolución fue notificada el 9 de febrero de 1993.

El 5 de marzo de 1993 acudió en revisión la parte demandada, MARPE. Señaló, en apoyo de su solicitud, los errores siguientes:

(1) ERRO EL HONORABLE TRIBUNAL AL ACTUAR SIN JURISDICCION EN TORNO A UNA MOCION SOLICITANDO RECONSIDERACION CUYOS FUNDAMENTOS FUERON SOMETIDOS LUEGO DE TRANSCURRIDO EL TERMINO JURISDICCIONAL PROVISTO.

(2) ERRO EL HONORABLE TRIBUNAL AL DEJAR SIN EFECTO EL PACTO ENTRE LAS PARTES EN VIRTUD DEL CUAL LAS PARTES EFECTIVAMENTE SUSTITUYERON AL TRIBUNAL POR EL DICTAMEN DEL ARQ. HECTOR L. TORRES Y CUYO DICTAMEN SERIA FINAL, FIRME, OBLIGATORIO E INAPELABLE.

(3) ERRO EL HONORABLE TRIBUNAL AL DICTAR UNA RESOLUCION DEJANDO SIN EFECTO LA DECISION DEL ARQ. HECTOR L. TORRES CUANDO ELLO LE ESTABA VEDADO POR ACUERDO Y ESTIPULACION DE LAS PARTES QUIENES PACTARON EXPRESAMENTE QUE SOMETERIAN TODAS LAS CONTROVERSIAS Y RECLAMACIONES AL ARQ. HECTOR L. TORRES Y QUE EL DICTAMEN DE ESTE SERIA FINAL, FIRME, OBLIGATORIO E INAPELABLE.

(4) ERRO EL HONORABLE TRIBUNAL AL REEVALUAR LOS HECHOS Y LA EVIDENCIA QUE NO TUVO ANTE SI CON EL FIN DE SUSTITUIR SU CRITERIO POR EL PROCESO ADJUDICATIVO Y EL ANALISIS OBJETIVO Y PONDERADO DEL PERITO SELECCIONADO POR LAS PARTES PARA DIRIMIR Y ADJUDICAR LAS CONTROVERSIAS.

(5) ERRO EL HONORABLE TRIBUNAL AL ADJUDICAR DE NOVO Y EN SUS MERITOS LAS CONTROVERSIAS Y RECLAMACIONES DIRIMIDAS POR EL PERITO SELECCIONADO POR LAS PARTES SO COLOR DE ESTAR MERAMENTE MODIFICANDO EL DICTAMEN DE AQUEL POR ALEGADOS ERRORES DE COMPUTOS AL AMPARO DE LA LEY DE ARBITRAJE DE PUERTO RICO, 32 L.P.R.A., SECCION 3222.

Decidimos revisar y expedimos el auto.

## I

En el primer error se alega, en síntesis, que la parte demandante presentó, *fuera de término*, los fundamentos de su moción de reconsideración. En dicha moción, la parte demandante señaló que había solicitado una modificación y corrección del laudo y que, por los fundamentos allí expresados, solicitaba la reconsideración de la sentencia. Según el recurrente, la aludida moción fue presentada al tribunal, por orden de éste, fuera de término.

Este error es inmeritorio. De los autos originales surge que ambas mociones, la de reconsideración y la que solicitaba la modificación y corrección del laudo de arbitraje, fueron presentadas conjuntamente, en tiempo, el 4 de noviembre de 1992.

## II

A. Por estar íntimamente relacionados, discutiremos conjuntamente los errores restantes. Los errores dos (2) y tres (3) se refieren a la estipulación de 13 de marzo de 1992, en virtud de la cual las partes acordaron someter al Arq. Héctor L. Torres las reclamaciones de la demanda y la reconvención para que éste las dirimiese. En dicha estipulación expresaron que habían sostenido reuniones e intercambiado documentos con miras a transigir tanto la demanda como la reconvención y que, como resultado de estas gestiones, habían acordado que lo más económico y expedito era someterlas al arquitecto Torres para que éste resolviese las controversias. La decisión del arquitecto Torres, por acuerdo expreso de las partes y así especificado en la estipulación, sería "final, firme, inapelable y obligatoria". Solicitaron, además, la paralización de los procedimientos y se obligaron a informar al tribunal la decisión del arquitecto Torres "para que éste a su vez emita una sentencia de conformidad a la misma".

El 28 de septiembre de 1992 el arquitecto Torres emitió su decisión. Informó al tribunal que el arbitraje se llevó a cabo "conforme al contrato ('AIA Document A101–Standard Form of Agreement Between Owner and Contractor–1987') otorgado por las partes y las condiciones generales del 'AIA Document A-201 General Conditions of the Contract for Construction–1989' ". Además, indicó que los abogados de las partes habían estado "conformes en que el laudo [se hiciera] sin explicar el procedimiento mediante el cual se llegó a las adjudicaciones de las reclamaciones". Hizo constar que había llegado a su decisión luego de analizar el "Memorial sometido por el Dueño y sus 76 anejos así como ... el Memorando sometido por el Contratista y sus 25 'Exhibits' ".

Sostiene la parte recurrente (MARPE) que, ante estas circunstancias, el tribunal no podía revisar y dejar sin efecto el laudo, porque al así actuar revocó la estipulación de las partes que había aprobado previamente.

En los errores cuatro (4) y cinco (5), la parte recurrente, MARPE, señala en síntesis que el tribunal, sin autoridad para ello, reevaluó los hechos y sustituyó la apreciación de la prueba hecha por el árbitro. Alega que las partes no sólo habían seleccionado el árbitro por sus cualificaciones, sino que expresamente habían pactado que éste no expresaría o explicaría los fundamentos para sostener sus determinaciones y su conclusión. Ante ello, continuaron alegando que el tribunal se excedió al reevaluar los hechos e imponer sus criterios, "corrigiendo" así unos supuestos errores de cómputo.

En apoyo a su contención, explica o justifica la posición del árbitro de la forma siguiente:

1. El árbitro *no* le concedió intereses a la demandante no por discriminar, como concluyó el tribunal, sino porque éste había retenido en su poder, durante casi 3 años, la suma de trescientos doce mil novecientos sesenta y cinco dólares ($312,965) pertenecientes al peticionario. Dicha

suma representaba el retenido de la obra; certificaciones de obra realizadas y aprobadas, pero no pagadas y órdenes de cambio por trabajo, equipos y materiales adicionales incorporados a la obra, pero no pagados.

2. En cuanto al aumento en el monto a pagarle a la parte demandante por multas por retraso en la terminación de la obra, alega que erró el tribunal al utilizar en sus cómputos la fecha de mayo de 1990, que fue la pactada. Según se discute en el escrito, el árbitro utilizó la *fecha de terminación substancial* de la obra, o sea, mayo de 1989, conforme fue certificada por el representante arquitecto de la parte demandante en la obra en la Solicitud de Permiso de Uso a A.R.Pe. Alega, además, que el tribunal pretende la imposición de una multa durante un período cuando la demandante utilizaba y disfrutaba de dos terceras (2/3) partes de la obra.

3. En cuanto a la revocación de la suma concedida a la parte recurrente por el árbitro por concepto de la Orden de Cambio 17; sostiene que erró el tribunal al eliminar la partida por no constar que mediara una autorización escrita. Según la parte recurrente, el árbitro tuvo prueba ante sí de que se realizó y se incorporaron materiales a la obra o del arquitecto, los cuales *no* fueron contemplados en los planos y especificaciones del proyecto por órdenes y directrices del dueño o del arquitecto.

B. La solución del problema que plantea este caso requiere una integración de los principios generales del derecho en lo concerniente a una estipulación y de la norma vigente en torno a la revisión judicial de un laudo de arbitraje.

Según surge de la sentencia, las partes, luego de completar un "extenso descubrimiento de prueba", acordaron, mediante estipulación, someterse a un proceso de arbitraje, saliéndose así del cauce judicial. De esta estipulación surge, con meridiana claridad, que las partes acordaron que la decisión del árbitro sería "final, firme, inapelable y

obligatoria". Estas estipulaciones fueron aprobadas por el tribunal.

Según indicáramos anteriormente, del informe del árbitro surge que el arbitraje sería llevado a cabo "conforme al contrato entre las partes" y las condiciones generales del " 'AIA Document A-201 General Conditions of the Contract for Construction–1989' " y que el laudo sería "sin explicar el procedimiento mediante el cual se llegó a las adjudicaciones de las reclamaciones".

Con respecto al arbitraje, el documento de la *American Institute of Architects* (AIA), *General Conditions of the Contract for Construction*, contiene unas disposiciones sobre el asunto. En lo pertinente, allí se indica:

> ... 4.5.7. *Judgment of Final Award.* The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.[2]

Lo antes citado es consistente y no altera el "acuerdo de sumisión" que contiene la estipulación, a los efectos de que la decisión o el laudo sería final, firme e inapelable. Nada se pactó en cuanto a que la decisión fuera conforme a derecho. Ante estas circunstancias concluimos que no tenía que ser conforme a derecho.

Una estipulación, como la del caso de autos, equivale a un acuerdo de transacción que obliga a las partes. *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 74 (1987); *Magee v. Alberro*, 126 D.P.R. 228 (1990). Este tipo de acuerdo pone fin o termina un pleito comenzado y comprende los objetos expresados específicamente y los que por inducción lógica y necesaria deban entenderse comprendidos en la transacción. Art. 1709 y 1714 del Código Civil, 31 L.P.R.A. secs. 4821 y 4826. A tenor con lo

---

[2] A pesar de que el informe del árbitro hace mención de *AIA General Conditions of the Contract for Contruction* de 1989, en los autos originales sólo consta el de 1987.

dispuesto en el Art. 1716 del Código Civil, 31 L.P.R.A. sec. 4828, una transacción puede dejarse sin efecto cuando en el consentimiento prestado por una de las partes media error, dolo, violencia, intimidación o falsedad de documentos. Art. 1217 del Código Civil, 31 L.P.R.A. sec. 3404.

■ La estipulación debe ser interpretada "presuponiendo una lealtad y una corrección en su misma elaboración ... entendiendo que las partes al redactarl[a] quisieron expresarse según el modo normal propio de gentes honestas y no buscando circunloquios, confusiones deliberadas u oscuridades. ... [D]ebe ser interpreta[da] de manera que el sentido que se le atribuya sea el más conforme para llegar a un desenvolvimiento leal de las relaciones contractuales y para llegar a las consecuencias contractuales exigidas conforme a las normas éticas. ... Las declaraciones de voluntad deben interpretarse en el sentido más conforme con la confianza que hayan podido suscitar de acuerdo con la buena fe". L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. 1, Cap. XI, Sec. 45, págs. 251–252.

Tomando en consideración lo antes expuesto, hemos examinado con detenimiento los autos originales y los escritos de las partes y no hemos encontrado fundamento alguno para dejar sin efecto la transacción a la cual llegaron las partes.

■ Ahora bien, en cuanto a los laudos de arbitraje, específicamente, en nuestra jurisdicción priva la norma de que éstos merecen de los tribunales gran deferencia. En *J.R.T. v. Corp. Crédito Agrícola*, 124 D.P.R. 846, 849 (1989), expresamos:

> ... [u]n laudo fundamentado en la sumisión voluntaria de las partes está sujeto a revisión judicial sólo si las partes convienen en que la controversia sometida al árbitro sea resuelta conforme a derecho. ... En ausencia de disposición expresa a esos efectos, un laudo sólo puede ser impugnado si se demuestra la

existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión en resolver todas las cuestiones en controversia que se sometieron o que el mismo resulte contrario a la política pública.

En *J.R.T. v. Vigilantes, Inc.*, 125 D.P.R. 581 (1990), reiteramos la norma referente a los criterios o causales para la revisión judicial de un laudo.

En el caso de autos el foro de instancia, fundamentándose en el Art. 23 de la Ley de Arbitraje de Puerto Rico, Ley Núm. 376 de 8 de mayo de 1951 (32 L.P.R.A. sec. 3223)[3] reevaluó la apreciación de la prueba realizada por el árbitro y modificó sus determinaciones. Erró al así hacerlo.

Con respecto a los laudos de arbitraje, hemos resuelto que no se puede inquirir sobre el proceso deliberativo, mental y decisional del árbitro. En los laudos que no son conforme a derecho los tribunales no deben revisar alegados errores en la apreciación de la prueba o en la aplicación de las normas de derecho, a pesar del sentir concurrente o disidente que puedan albergar. *C.R.U.V. v. Hampton Dev.*, 112 D.P.R. 59, 64 (1982); *Rivera v. Samaritano & Co., Inc.*, 108 D.P.R. 604, 608–609 (1979); *Autoridad Sobre Hogares v. Tribl. Superior*, 82 D.P.R. 344 (1961). En estos laudos, las determinaciones de un árbitro, en cuanto a los hechos y en cuanto a derecho, son finales y no revisables por los tribunales, aunque haya mediado error por parte de éstos en la apreciación de los hechos y el de-

---

[3] *"Modificación o corrección del laudo*

En cualquiera de los casos siguientes el tribunal deberá, previa notificación y vista, y a solicitud de cualquiera de las partes, dictar una orden modificando o corrigiendo el laudo:

"(a) Cuando hubo evidente error de cálculo en cuanto a las cifras, o evidente error en la descripción de cualquier persona, cosa o propiedad.

"(b) Cuando los árbitros hayan resuelto sobre materia no sometida a ellos.

"(c) Cuando el laudo sea imperfecto en materia de forma, sin afectar los méritos de la controversia.

"La orden deberá modificar y corregir el laudo a fin de dar efecto a la intención del mismo."

recho aplicable, y aun cuando el tribunal hubiese llegado a una conclusión distinta. *Junta Relaciones del Trabajo v. N.Y. & P.R. S/S. Co.*, 69 D.P.R. 782, 797–800 (1949); *Autoridad Sobre Hogares v. Tribl. Superior*, supra, págs. 358–359; *C.R.U.V. v. Hampton Dev.*, supra, pág. 64. "En ausencia de fraude, conducta impropia, falta del debido procedimiento en la celebración de la vista, violación de la política pública, falta de jurisdicción o dejar de resolver todas las cuestiones sujetas a controversia ... carecemos de autoridad para anular un laudo de arbitraje 'por meros errores de criterio, ya sean éstos en cuanto a la ley o en cuanto a los hechos'." *Junta Rel. Trabajo v. Orange Crush of P.R.*, 80 D.P.R. 292, 295 (1958).

El laudo ante nuestra consideración no tenía que ser conforme a derecho. De la moción que solicitó la modificación y correción del laudo surge, con meridiana claridad, que la parte demandante lo que cuestionó fue el proceso mediante el cual el árbitro adjudicó las reclamaciones en disputa. No se trataba de un mero error de cálculo ni estaba implicado fraude, conducta impropia o falta de jurisdicción. Tampoco resolvió el árbitro materia que no le fue sometida ni fue el laudo imperfecto en materia de forma. El Art. 23 de la Ley de Arbitraje de Puerto Rico, *supra*, no aplicaba en este caso. El tribunal erró al reconsiderar la Sentencia de 5 de octubre de 1992, modificando de esta forma el laudo de arbitraje emitido por el arquitecto Torres.

Por todo lo antes expuesto, *se dictará sentencia revocando la resolución emitida por el Tribunal Superior, Sala de Bayamón, el 5 de febrero de 1993 y, en consecuencia, quedará en todo vigor la sentencia dictada por dicho foro el 5 de octubre de 1992.*