TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, la peticionaria, Bio Medical Applications (en adelante Bio Medical), solicitando se expida el auto de certiorari para revocar el laudo emilido por el árbitro Radamés Jordán Ortiz el 7 de febrero de 2000 y confirmado por el Tribunal de Primera Instancia, Sala de Arecibo, (Hon. Marcos T. Calderón Vázquez), según surge de la sentencia de 8 de agosto de 2000 y notificada el 13 de octubre de 2000. En el mencionado laudo se determinó que Bio Medical despidió injustificadamente a el Sr. Eddie López.
I
El Sr. Eddie López comenzó a trabajar para Bio Medical Applications el 26 de septiembre de 1995 como Técnico de Reuso, en el tumo de 2:00 p.m. a 10:30 p.m. Las funciones del Sr. López como Técnico de Reuso, eran, entre otras, limpiar para reuso los filtros de los pacientes de diálisis, darle mantenimiento al equipo y maquinaria de reuso, realizar pruebas y anotarlas en hojas de control, preparar filtros adicionales (spare).
El 24 de noviembre de 1995, se le hizo un aviso verbal que también consta por escrito y que fue firmado por el Sr. López, en donde se le advirtió que los carros de reuso bajo su control estaban sucios, defectuosos y con fugas de agua y que el cuarto de reuso estaba sucio, además de otras advertencias. 
Nueve meses más tarde, el 14 de agosto de 1996, se le hicieron dos avisos por escrito en los que se le recriminó el abandono del área de trabajo sin autorización y por el desempeño negligente de sus tareas. Así también, ese misnio día se le hizo una amonestación escrita final por enviar un dializador sucio (con sangre). 
Posteriormente, el 5 de marzo de 1997, mediante aviso escrito, se le suspendió por no estar desempeñando sus tareas. Cabe señalar que el día del incidente de la amonestación se encontró al Sr. López jugando bingo frente a la unidad en horario laborable. Finalmente, el 11 de agosto de 1997, se le envió aviso de terminación al Sr. Eddie López por no cumplir con las tareas asignadas y por baja productividad en su tumo. La carta de despido se le envió finalmente, el 28 de agosto de 1997.
La Unión General de Trabajadores (en adelante Unión), en representación del Sr. López, presentó ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo una querella de arbitraje por entender que el despido fue injustificado. La vista de arbitraje se celebró los días 13 de febrero y 29 de marzo de 1999. El *987 acuerdo de sumisión fue el siguiente:
"Determinar si el despido del querellante Eddie López, estuvo justificado o no. De no estarlo el Arbitro dispondrá el remedio adecuado."
El 7 de febrero de 2000 el árbitro emitió su Laudo y determinó que el despido fue uno injustificado.
Para sostener su laudo, expresó lo siguiente:

"La vista de arbitraje sobre el despido no es el momento para probar todas y cada una de las instancias previas en que se amonestó o se suspendió el empleado, con el propósito de justificar su despido. Los hechos constitutivos para el despido hay que probarlos de manera particular y específica. O sea, quiere esto decir, que en la vista sobre el despido el Patrono tiene que probar que hubo las razones y/o elementos justificados para el mismo y luego; que previamente había aplicado la disciplina progresiva."

El 8 de marzo de 2000, Bio Medical presentó ante el Tribunal de Primera Instancia, Sala Superior de Arecibo, una petición de revisión de Laudo de Arbitraje. El Tribunal de Instancia declaró no ha lugar la revisión solicitada y mantuvo en vigor el laudo de arbitraje, mediante sentencia del 8 de agosto de 2000. Para ello manifestó lo siguiente:

"Si bien puede notarse un patrón de negligencia en el desempeño de sus obligaciones por parte del empleado, la razón para el despido en sí, no quedó desmostrada por el patrrono ante el árbitro."

Inconforme, la peticionaria Bio Medical, presentó el recurso de certiorari alegando que se cometieron los siguientes errores:

“Erró el Honorable Tribunal de Primera Instancia y el Arbitro al determinar que el despido del Sr. López no se justificó porque el patrono no demostró razón para ello.

Erró el Honorable Tribunal de Primera Instancia al confirmar un laudo en el cual el Arbitro al momento de evaluar la razón del despido del Sr. López no tomó en consideración la disciplina progresiva aplicada al empleado, sino que en lugar lo analizó como si hubiera sido una falta única y aislada.

Erró el Honorable Tribunal de Primera Instancia al determinar que la norma de deferencia hacia los laudos de arbitraje, le impedía pasar juicio sobre la determinación del árbitro de no tomar en consideración la disciplina progresiva aplicada al empleado. ”

II
Es principio básico en casos de revisión judicial de laudos de arbitraje que éstos gozan de gran deferencia ante los tribunales en nuestra jurisdicción por ser un método ideal de resolución de disputas obrero-patronales. La función de los tribunales al revisar la validez de un laudo está limitada a determinar la existencia de fraude, conducta impropia del árbitro, falta de debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las cuestiones en controversia que se sometieron o que el mismo resulte contrario a la política pública. Condado Plaza Hotel & Casino v. Asociación de Empleados de Casino de P.R., 99 J.T.S. 153; Febus v. Marpe Construction, 135 D.P.R. 206 (1994); J.R.T. v. Vigilantes, Inc., 125 D.P.R. 581 (1990); J.R.T. v. Corp. Crédito Agrícola, 124 D.P.R. 846 (1989); J.R.T. v. Hato Rey Psychiatric Hospital, 119, 581 (1990); J.R.T. v. Corp. Crédito Agrícola, 124 D.P.R. 846 (1989); J.R.T. v. Hato Rey Psychiatric Hospital, 119 D.P.R. 62 (1987).
Sin embargo, aún en casos donde se permite revisar la validez jurídica del laudo, los tribunales no deben inclinarse fácilmente a invalidarlos a menos que sea evidente que no fueron resueltos conforme a derecho. Una discrepancia de criterio con lo expuesto en el laudo no justifica la intervención del tribunal. Las revisiones de *988 laudo en los tribunales sigue un proceso similar a su función revisora de la corrección o incorrección de la sentencia emitida por un tribunal inferior o de la decisión de un organismo administrativo. No se trata de relitigar la controversia en un proceso civil ordinario, lo que convertiría la labor del árbitro en un ejercicio inútil y desvirtuaría la naturaleza del procedimiento de arbitraje laboral. Queda claro que la revisión de un laudo de arbitraje no constituye un juicio de novo y que el tribunal debe limitarse a verificar que la determinación del árbitro sea conforme a derecho. Universidad Católica de P.R. v. Triangle Engineering Corp., 136 D.P.R. 133 (1994); U.I.L. de Ponce v. Destilería Serrallés, Inc., 116 D.P.R. 348 (1985); Rivera v. Samaritano & Co., 108 D. P.R. 604 (1979).
La principal función del árbitro en el proceso de arbitraje es la interpretación de las cláusulas del convenio colectivo. El margen de interpretación del árbitro dependerá de la claridad del lenguaje utilizado en el convenio colectivo. Aun cuando el lenguaje aparente ser claro, puede que admita interpretaciones conflictivas, en cuyo caso el árbitro tiene flexibilidad para hacer su interpretación. J.R.T. v. National Packing Co., 112 D.P.R. 162 (1982).
En el caso de autos, el convenio colectivo delimita en forma clara e inequívoca el ámbito de autoridad adjudicativa del árbitro.
Dispone la sección 7 del Art. V del convenio que:

"La decisión del árbitro será final y obligatoria para todas las partes, siempre y cuando sea conforme a derecho."

La facultad revisora del Tribunal de Instancia se encontraba limitada a determinar, tomando en cuenta la flexibilidad del árbitro en la interpretación del convenio, si los fundamentos sobre los cuales se apuntaló el laudo eran conforme a derecho y al convenio.
Es claro ante los planteamientos bajo nuestra consideración, que no estamos ante la aplicación de la norma de revisión judicial sobre la validez de un laudo por fraude, conducta impropia, falta de debido proceso de ley, falta de jurisdicción, omisión de resolución de controversias o determinación contra la política pública. El asunto traído a nuestra consideración trata de la revisión de la interpretación que formuló el árbitro en cuanto a si el despido fue uno justificado o no.
El Artículo 2 de la Ley 80 del 30 de mayo de 1976, 29 L.P.R.A. sec. 185b, establece las causas para el despido de un empleado; en lo pertinente, dispone que:

"Se entenderá por justa causa para el despido de un empleado de un establecimiento:

(a) Que el obrero siga un patrón de conducta impropia o desordenada.

(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

(c) Violación reiterada por el empleado de las ...".

De una simple lectura de la sección 185b, de la prueba documental del caso, del laudo y de la sentencia del Tribunal de Instancia, podemos concluir que el Sr. Eddie López incurrió en una conducta que obligó a Bio Medical a tomar la decisión de despedirlo. A dos meses de comenzado el trabajo, el Sr. López recibió su primera amonestación. Nueve meses después recibe dos amonestaciones por trabajo negligente y abandono de sus labores. Luego de esta amonestación transcurren siete meses y es suspendido por tres días. Finalmente, cinco meses más tarde lo despiden, después de darle su quinta amonestación. Estamos ante un claro patrón de conducta que justifica el despido.
*989 El Tribunal Supremo de Puerto Rico ha interpretado la sección 185b de la Ley 80 en un sinnúmero de ocasiones. Ha establecido que una falta o acto aislado que de lugar al despido del empleado en primera ofensa tiene que ser de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarlo del establecimiento. Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643 (1994). Este no es el caso ante nuestra consideración como así lo quiso demostrar el árbitro.
Por otro lado, el Tribunal Supremo ha expresado que un patrón de incumplimiento con las reglas y reglamentos de una empresa podría dar lugar a un despido justificado. Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763 (1992). Para que las violaciones de las normas de trabajo constituyan justa causa para el despido, el patrono tiene que probar la razonabilidad de las reglas establecidas para el funcionamiento del establecimiento, que le suministró una copia escrita de éstas al empleado y que el empleado las violó en reiteradas ocasiones. Rivera Aguila v. K-Mart de P.R., 123 D.P.R. 599 (1989).
El árbitro, al momento de emitir su laudo, erró al no considerar la conducta anterior del Sr. López. El árbitro hizo su determinación considerando únicamente la última falta cometida y se negó a considerar el patrón de conducta negligente del querellante, que no fue controvertida. 
La sección 2 del Artículo X del convenio dispone que:

"La Compañía eliminará del expediente disciplinario del empleado cualquier documento relacionado con acción disciplinaria, situación o amonestación cuya fecha exceda de un año, siempre y cuando el empleado no haya incurrido en violación alguna dentro del último período de doce (12) meses."

Podemos observar de un análisis de los documentos que obran en el apéndice que todas las amonestaciones estaban vigentes debido a que se dieron cada.una dentro de un período menor de 12 meses; o sea, que tuvieron que ser consideradas por el árbitro al momento de emitir el laudo. Esto resulta ser más obvio, cuando la propia sección 185b de la Ley 80 reconoce que un patrón de conducta impropia o desordenada del empleado puede ser causa de despido. 
El laudo del árbitro destaca en la página 6 que el patrono no podía sostener el despido fundamentándose solamente en lo sucedido el 11 de agosto de 1997. El despido del Sr. López no se debió a lo sucedido el 11 de agosto de 1997, sino al claro patrón de conducta negligente e impropia como empleado. Así consta en la carta de despido del 28 de agosto de 1997 y en la documentación presentada por la peticionaria y no controvertida por el recurrido. Por lo tanto, el despido del Sr. Eddie López fue uno justificado. Un árbitro no puede ignorar ni omitir prueba pertinente y no controvertida para justificar su laudo.
III
Por los fundamentos antes expresados, se expide el auto, se revoca la sentencia del 8 de agosto de 2000, emitida por el Tribunal de Primera Instancia y, por ende, queda revocado el laudo emitido por el árbitro Radamés Jordán Ortiz.
Lo acordó el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIOS 2001 DTA 75
1. Ver Apéndice del peticionario, pág. 58.
2. Apéndice del peticionario, pág. 52.
*990 3. El primer aviso fue por hechos acontecidos el 19 de julio de 1996 y el segundo por hechos del día 22 de julio de 1996.
4. Apéndice del peticionario, páginas 53 y 54.
5. La suspensión fue por un período de tres días, del 6 al 8 de marzo de 1997.
6. Apéndice del peticionario, página 55.
7. Apéndice del peticionario, página 50.
8. "La vista de arbitraje sobre el despido no es el momento para probar todas y cada una de las instancias previas en que se amonestó o se suspendió el empleado, con el propósito de justificar su despido." Apéndice del peticionario, página 5.
9. Debemos recordar que lo que estaba bajo consideración del árbitro era si el despido fue justificado o no. Apéndice del peticionario, página 2.
10. Apéndice del peticionario, página 6.