RAMÓN A. CRUZ, SECRETARIO DE INSTRUCCIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, querellante y peticionario, *v.* MANUEL QUIÑONES DÍAZ, querellado y recurrido; JUNTA DE APELACIONES DEL SISTEMA DE INSTRUCCIÓN PÚBLICA, recurrida.

*Número:* O-76-419    *Resuelto:* 30 de enero de 1979

*Roberto Armstrong, Jr., Procurador General Interino* y *Justo Gorbea Varona, Procurador General Auxiliar,* abogados del peticionario; *Federico Rivera Sáez,* abogado del recurrido.

### SENTENCIA

San Juan, Puerto Rico, a 30 de enero de 1979

Por estar igualmente dividido el Tribunal se confirma la sentencia del tribunal de instancia que dispuso que el maestro querellado fuera restituido a sus labores escolares.

Así lo pronuncia y manda el Tribunal y certifica el señor Secretario. El Juez Asociado Señor Martín emitió un voto particular al que se une el Juez Presidente, Señor Trías Monge, y los Jueces Asociados Señores Torres Rigual e Irrizarry Yunqué. Los Jueces Asociados Señores Rigau y Díaz Cruz, respectivamente, emitieron votos particulares separados.

(Fdo.) Ernesto L. Chiesa
*Secretario*

—O—

Voto particular emitido por el Juez Asociado Señor Martín al que se unen el Juez Presidente, Señor Trías Monge, y los Jueces Asociados Señores Torres Rigual e Irizarry Yunqué.

El Secretario de Instrucción Pública de Puerto Rico está facultado para cancelar el certificado de cualquier maestro permanente o suspender dicho certificado por tiempo determinado, mediante el procedimiento dispuesto en ley, por varias causas entre las que se encuentra la "observancia de una conducta desordenada, incorrecta o lesiva al buen nombre del sistema de instrucción pública de Puerto Rico." 18 L.P.R.A. sec. 274(g).

En el caso de autos suspendió el certificado de maestro al querellado Manuel Quiñones Díaz por el término de un año

a base de los siguientes hechos imputádosle mediante querella:

"Que el día 28 de febrero de 1974, en o alrededor de las 7:30 de la mañana, frente a la Escuela Intermedia Bayamón Gardens, en Bayamón, Puerto Rico, el referido maestro ante la presencia de maestros y estudiantes agredió ilegal y maliciosamente al señor Víctor López Pintado, esposo de la maestra Carmen V. Adorno de López, en ocasión en que éste la llevaba a dicha escuela en donde se desempeñaba como maestra. Por estos hechos el maestro fue acusado ante el Tribunal de Distrito de Puerto Rico y hallado culpable del delito de Acometimiento y Agresión Simple."

El trasfondo de los hechos que dan margen a la querella es pertinente a los fines de una mayor inteligencia del asunto planteado.

En 31 de enero de 1974 la Federación de Maestros de Puerto Rico decretó una huelga que se extendió hasta el 3 de marzo siguiente. Los maestros pertenecientes a la Federación, incluyendo al querellado, no asistieron a clases durante dicho período de tiempo o parte de él. A solicitud del Secretario de Instrucción el Tribunal Superior, Sala de San Juan, dictó una orden provisional de entredicho en 13 de febrero de 1974 requiriendo a los maestros en huelga a reintegrarse a sus labores docentes y cumplir con los deberes y obligaciones de sus respectivos cargos. No obstante haber ordenado el Tribunal la reintegración a sus labores los maestros envueltos se negaron a obedecerla. En su consecuencia, el Secretario procedió a suspender a los infractores de empleo y sueldo y les canceló sus certificados de maestro conforme lo autoriza la Ley Núm. 115 de 30 de junio de 1965, según enmendada, 18 L.P.R.A. sec. 274, por constituir tal proceder la prevaricación, insubordinación y conducta desordenada, incorrecta o lesiva al buen nombre del sistema de instrucción pública. En 1ro. de marzo siguiente la orden provisional se convirtió en *injunction* permanente.

El próximo día 2 de marzo el Secretario se reunió con el Presidente de la Federación de Maestros llegando al acuerdo contenido en la siguiente comunicación que le dirigió a este último:

"Estimado señor Rodríguez:

Esta carta confirma nuestra conversación del día 2 de marzo de 1974 relacionada con las acciones administrativas que este Departamento ha tomado con los maestros en huelga.

Tan pronto regresen los maestros a sus labores el lunes, este Departamento suspenderá el envío de notificaciones de cese de empleo y sueldo para aquellos maestros que se confirme han regresado a su trabajo.

Con respecto a las suspensiones ya notificadas, solicitaré con urgencia de la Junta de Apelaciones que dé atención inmediata a la vista de los casos en un sólo bloque ya que la causa de suspensión ha sido la misma. De haber terminado el paro de todo el personal en huelga, lo notificaré a la Junta para que se considere este hecho como un atenuante..

Una vez la Junta de Apelaciones tome la decisión correspondiente, este Departamento notificará a los maestros suspendidos sobre la misma.

Sobre el derecho de los maestros en huelga a cobrar el aumento de sueldo automático que provee la ley actual, me propongo solicitar el lunes próximo una opinión al Honorable Secretario de Justicia sobre el particular.

En caso de que los maestros en huelga regresen al trabajo el próximo lunes, el período de ausencia habrá excedido por un sólo día, en tal situación recomendaré al Honorable Secretario de Justicia interprete la ley en la forma más liberal que ello sea posible.

De terminar el paro huelgario y regresar todos los maestros a sus labores, este Departamento no tomará otras acciones administrativas ulteriores [sic] contra los participantes."

Los maestros afectados acudieron en apelación a la Junta de Apelaciones del Sistema de Instrucción Pública, Caso Núm. 74-002C, la que modificó la determinación que había hecho el Secretario al cancelar los certificados de los maestros, y redujo la medida disciplinaria a una suspensión limitada

al tiempo en que cada uno de los maestros hubiera estado ausente de sus labores docentes entre el 31 de enero, fecha en que comenzó la huelga, y el 3 de marzo fecha en que se reintegraron a sus labores, todo ello basado en una estipulación sometida por las partes y aprobada por la Junta, a la luz de la prueba documental ofrecida y especialmente la carta del Secretario de Instrucción de 2 de marzo de 1974.

Ante los precedentes mencionados, el Secretario expidió la querella que he copiado textualmente al comienzo de este voto contra el maestro Manuel Quiñones Díaz, que es objeto de consideración en este recurso.

El querellado apeló oportunamente ante la Junta de Apelaciones del Sistema de Instrucción Pública del castigo de un año impuéstole por el Secretario, cuya Junta revocó la medida adoptada por el Secretario y dispuso que el querellado fuera restituido a sus labores escolares a la mayor brevedad posible. El Secretario acudió ante el Tribunal Superior, Sala de San Juan (Villaronga, Magistrado Honorario designado Juez Superior), que confirmó la decisión de la Junta de Apelaciones. Este Tribunal emitió auto de *certiorari* para revisar los procedimientos habidos.

Conforme lo dispone la ley, la revisión de la decisión de la Junta de Apelaciones se limita a cuestiones de derecho y se dará con vista a los documentos originales, a la transcripción de la prueba testifical y a la prueba documental. 18 L.P.R.A. sec. 274*l*.

La Junta de Apelaciones, al revocar el castigo impuéstole al querellado expresó:

". . . el hecho que se le imputa a este maestro ocurrió como una consecuencia directa del estado huelgario y dentro de la fecha de dicho movimiento huelgario y habiendo este Querellado Apelante sido [*sic*] procesado por un Tribunal General del Sistema Judicial de Puerto Rico,[1] ese acto ya sancionado por el

---

(1) Los hechos que motivaron la querella contra el aquí apelado ocurrieron dentro del período de la huelga.

Estado, si bien es verdad que podría ser sancionado igualmente porque en el mismo está envuelta una conducta lesiva al buen nombre del Sistema de Instrucción Pública, no es menos cierto que la manifestación del Secretario de Instrucción Pública en el sentido de que no habría de tomar medida otra alguna de carácter administrativo contra los participantes en la huelga una vez se reintegrasen a sus labores, nos lleva a concluir que no habiéndose establecido por la prueba que este Querellado Apelante no se restituyó a sus labores escolares tenemos que concluir que sí lo hizo y en tal virtud está protegido por el compromiso que revela el párrafo de la carta del Secretario de Instrucción Pública que hemos citado[2]."

El tribunal de instancia basó su revisión exclusivamente en las cuestiones de derecho conforme lo ordena la ley especial. 18 L.P.R.A. sec. 274*l*. Una de las cuestiones de derecho es si un examen del récord en su totalidad revela que existe evidencia sustancial que sostenga las conclusiones de hecho del organismo administrativo. *J.R.T.* v. *Línea Suprema, Inc.*, 89 D.P.R. 840 (1946); *J.R.T.* v. *Simmons Int'l. Ltd.*, 78 D.P.R. 375 (1955); Davis, *Administrative Law Text*, 3ra ed., 1972, pág. 526; véase *J.R.T.* v. *Escuela Coop. E. M. de Hostos*, 107 D.P.R. 151 (1978).

El récord del procedimiento habido ante la Junta de Apelaciones del Sistema de Instrucción demuestra que el maestro querellado se restituyó a sus labores conforme al acuerdo concertado entre el Secretario de Instrucción y el Presidente de la Unión. Luego de haber la Junta concluido ese hecho procedió a interpretar el compromiso contenido en la carta del Secretario de 2 de marzo en el sentido de que no habría de tomar acciones administrativas ulteriores contra los participantes. A la fecha en que se cursó dicha carta ya el Secretario había tomado acción administrativa contra el querellado y contra todos los maestros que habían participado en la huel-

---

(2) Refiriéndose al párrafo que dice que "[D]e terminar el paro huelgario y regresar todos los maestros a sus labores, este Departamento no tomará otras acciones administrativas ulteriores contra los participantes."

ga. Tal acción, aunque estaba basada en ausencias ilegales del trabajo, respondía a actos que envolvían conducta desordenada, incorrecta o lesiva al buen nombre del sistema de instrucción pública, lo que daba lugar a la cancelación del certificado de maestro. Por otro lado la conducta imputada al querellado en la querella objeto de este recurso, aunque está basada en otros hechos, i.e., agresión física a una persona durante el conflicto huelgario, también constituía conducta reprensible que estaba sujeta a ser castigada por la cancelación del certificado de maestro. La Junta resolvió, en esencia, que la acción disciplinaria que pretende tomar el Secretario mediante la citada querella está comprendida dentro de las causales que motivan la cancelación del certificado de maestro, y por tanto, que la institución de la querella queda excluida ante el claro texto de la carta del 2 de marzo dirigida a la Federación de Maestros.

No se trata pues de la interpretación de un estatuto sino del significado que el Secretario quiso trasmitir al insinuar que habría una remisión de las transgresiones de los huelguistas. La controversia planteada es más bien una cuestión de escudriñar cuál fue la intención del Secretario al frasear su misiva, que equivale a un intento de sondear su proceso mental de raciocinio. No tenemos duda de que el Secretario quiso que al terminar el incidente huelgario no hubiera más repercusiones que las ya habidas. Su propia carta indica que suspendería el envío de notificaciones de cese de empleo y sueldo para aquellos maestros que se confirmara que hubieran regresado a sus labores. Aún más, con respecto a las suspensiones ya decretadas, prometió recomendar a la Junta, pasado el paro, que fuera indulgente con ellos. Su actitud compasiva quedó reflejada además en su promesa de solicitar del Secretario de Justicia una opinión sobre el derecho de los maestros en huelga a cobrar el aumento de sueldo automático que provee la ley.

El tribunal de instancia resolvió que ante las claras expresiones y estipulaciones de las partes, le era forzoso concluir que las determinaciones de hecho de la Junta de Apelaciones "están sostenidas por evidencia sustancial contenida en el récord", y por tanto concluyó que "la Junta no actuó arbitrariamente ni abusó de su discreción al hacer su determinación de que al maestro Quiñones se restituyó a sus labores"; y en cuanto a la interpretación del párrafo crítico de la carta que concede indulgencia por otras faltas administrativas expresa que no debe "sustituir el criterio del Tribunal por el de la agencia cuya función, generalmente en materia especializada, se intenta revisar."

Muchos menos corresponde a este Tribunal adoptar un criterio particular sobre cuál ha de ser la más atinada interpretación de la carta que el Secretario dirigiera al Sr. Presidente de la Federación de Maestros. *Rodrigo* v. *Tribunal Superior*, 101 D.P.R. 151, 155 (1973). Deben respetarse las conclusiones de la Junta de Apelaciones del Sistema de Instrucción que es la agencia que tiene particular competencia para los asuntos encomendádoles. *Vda. de Alfonzi* v. *Comisión Industrial*, 90 D.P.R. 693, 705 (1964). Y existiendo una base racional para sostener la interpretación de la agencia, sin que ella sea contraria a la ley, ni a la jurisprudencia establecida por este Tribunal ni a disposición constitucional alguna, confirmaría la sentencia recurrida.

—O—

Voto particular del Juez Asociado Señor Rigau disintiendo.

No creo que debe condonarse una agresión viciosa e innecesaria y ejecutada en las circunstancias en que se llevó a cabo la del caso de autos, especialmente cuando fue cometida por un maestro, quien tiene un especial deber de dar un buen ejemplo.

El agredido fue a la escuela a acompañar a su esposa, y el agresor, olvidándose de su honrosa profesión y de su deber

de dar un buen ejemplo de conducta, cometió la agresión innecesariamente.

Además de eso creo que fue muy imprudente porque al atacar a un hombre que va acompañando a su esposa lo pone en la situación muy difícil, en la que queda su amor propio comprometido, y en esos casos la reacción del ofendido puede ser más violenta que de ordinario y ocasionar una tragedia. Tragedia para todos: para el agresor si es muerto, para el agredido que salió de su casa sin la intención de cometer un homicidio y para su esposa e hijos que sin duda tendrían que sufrir también parte de las consecuencias. Hay que tener mucha madurez, mayor que la que se le puede exigir a un hombre común, para no cometer una barbaridad en esas circunstancias.

La carta del Secretario de Instrucción parece demostrar que él estaba dispuesto a perdonar las ausencias pero no las agresiones. Difícilmente podía hacerlo porque las agresiones constituyen delito público y el Secretario de Instrucción no tiene el poder de indulto. Solo lo tiene el Gobernador de Puerto Rico. Constitución, Art. IV, Sec. 4.

Por las razones antes dichas yo hubiese revocado la sentencia recurrida.

—O—

Voto particular del Juez Asociado Señor Díaz Cruz.

Por considerar excluida de la remisión de culpa o amnistía ofrecida por el señor Secretario, la violencia ejercitada por el querellado contra una persona desligada del sistema de instrucción y ajena al conflicto huelgario, hubiera revocado la sentencia recurrida.