AIDA SANTOS y OTROS 23, demandantes, recurrentes y peticionarios, *v.* MUNICIPIO DE COMERÍO, demandado y recurrido.

*Número:* CC-96-170        *Resuelto:* 8 de enero de 1997

*Luis Amauri Súarez Zayas*, abogado de los peticionarios; *Hipólito F. Ortiz Ballester*, de *Ortiz Ballester & Pagán*, abogado del recurrido.

## SENTENCIA

Los peticionarios fueron destituidos por el Alcalde de Comerío por participar en un paro huelgario. La Junta de Apelaciones del Sistema de Administración de Personal (en adelante J.A.S.A.P.) confirmó los despidos. El Tribunal de Primera Instancia y el Tribunal de Circuito de Apelaciones denegaron las respectivas solicitudes de revisión y de *certiorari* presentadas por los destituidos. Los peticionarios acudieron oportunamente, ante nos, y el 12 de julio de 1996 expedimos el recurso solicitado.

Examinados los escritos de las partes, *resolvemos que no erró J.A.S.A.P. al sostener que la acción de destituir a los peticionarios estaba dentro del marco de acción legal permisible al Municipio de Comerío.*

*Se confirma la sentencia recurrida.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario del Tribunal Supremo. El Juez Asociado Señor Corrada Del Río emitió una opinión de conformidad, a la cual se unieron el Juez Asociado Señor Negrón García y la Juez Asociada Señora Naveira de Rodón. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Hernández Denton. El Juez Presidente Señor Andréu García y el Juez Asociado Señor Rebollo López no intervinieron.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario del Tribunal Supremo*

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Corrada Del Río, a la cual se unen el Juez Asociado Señor Negrón García y la Juez Asociada Señora Naveira de Rodón.

En el caso de epígrafe, la Junta de Apelaciones del Sistema de Administración de Personal (en adelante J.A.S.A.P.) sostuvo la procedencia de la destitución de los aquí peticionarios del servicio público, destitución que les fuera decretada por el Municipio de Comerío (en adelante el Municipio) como medida disciplinaria tras su participación en un paro huelgario. Tanto el Tribunal de Primera Instancia como el Tribunal de Circuito de Apelaciones confirmaron dicha destitución, por lo que los peticionarios acuden ante nos.

Toda vez que del expediente administrativo no surge un fundamento válido y suficiente para que esta Curia intervenga y varíe las conclusiones formuladas por dicho organismo administrativo especializado, resolvemos que la sentencia recurrida debe ser confirmada.

A continuación se exponen los hechos pertinentes y que J.A.S.A.P. consideró probados en el caso de autos.

I

Los peticionarios de epígrafe, todos empleados regulares de carrera del Municipio, efectuaron una primera manifestación o paro huelgario durante el mes de julio de 1993. Ello ante la negativa del Alcalde a reunirse para dialogar sobre sus reclamos. Como parte de sus problemas, los manifestantes apuntaron: (a) el despido de más de cuarenta y ocho (48) empleados transitorios pertenecientes al Partido Popular Democrático, quienes, alegadamente, fueron sustituidos por miembros del Partido Nuevo Progresista; (b) las condiciones de trabajo en el Departamento de Obras Públicas Municipal, especialmente la tensión que existía debido a que el supervisor de la dependencia, quien tenía un arma de fuego, la llevaba al área de trabajo haciendo alarde de ella, y (c) respeto en su trabajo como profesionales y mejores condiciones de empleo. En dicha ocasión, el paro huelgario conllevó que los peticionarios fueran amonestados y se les descontara de su sueldo el día que estuvieron participando en la manifestación.

Posteriormente, durante agosto de 1993, representantes del Alcalde y representantes de los empleados se reunieron con el propósito de dialogar sobre sus diferencias. Comenzaron el diálogo pero, en vista de que no pudieron llegar a un acuerdo, los empleados decidieron llevar a cabo un segundo paro durante noviembre de 1993.

Esta segunda manifestación se extendió por tres (3) días. Durante su celebración, los manifestantes portaron pancartas y expresaron estar en huelga contra la administración del Alcalde del Municipio. Servicios tales como el recogido de basura en las escuelas, el destape de pozos sépticos, el servicio de cuadro telefónico del Municipio y el recogido de desperdicios sólidos en general fueron obstacu-

lizados y adversamente afectados como resultado directo del paro huelgario.

Además, los manifestantes llevaron a cabo actos de intimidación y violencia, tales como amenazas a un chofer del Municipio, quien declaró que cuando pasaba frente a la línea de piquete para el recogido de basura le lanzaban piedras y le gritaban palabras soeces. Incluso, sostuvo que en una ocasión determinada, una de las piedras le causó daños al camión de la Defensa Civil.

Como resultado de lo anterior, el Municipio envió una comunicación de destitución a cuarenta y ocho (48) empleados. Posteriormente, a solicitud de dichos empleados, el Municipio ordenó la celebración de una vista administrativa informal ante un oficial examinador. Celebrada dicha vista, el oficial examinador designado realizó el correspondiente informe y recomendó que aquellos empleados que pudieran ser identificados como participantes del paro huelgario fueran destituidos, y a los que no fuera posible identificar se les procediera a descontar el día de trabajo. En consecuencia, sólo fueron destituidos veinticuatro (24) empleados; los restantes veinticuatro (24) fueron reinstalados. Según el Auditor del Municipio, en ningún momento la afiliación política de los empleados fue tomada en consideración al decretar las destituciones.

No conformes, los empleados destituidos apelaron ante J.A.S.A.P. Tras los trámites de rigor, dicho organismo sostuvo las destituciones impuestas por el Municipio. Específicamente, resolvió que debido a que el paro celebrado era ilegal y que los participantes habían sido amonestados previamente por dicha conducta, a la luz de la prueba presentada procedía la destitución de los peticionarios como medida disciplinaria. En cuanto a la alegación de los peticionarios a los efectos de que el despido se debió a razones de ideología política, la oficial examinadora de J.A.S.A.P. concluyó que de la prueba surgía que los cuarenta y ocho (48) empleados que habían participado en el

paro eran pertenecientes al Partido Popular Democrático, y que, a pesar de ello, una vez se celebraron las vistas administrativas correspondientes, sólo se destituyó a veinticuatro (24) empleados.

De dicha determinación, los peticionarios acudieron mediante revisión administrativa ante el Tribunal de Primera Instancia, quien confirmó a J.A.S.A.P. En consecuencia, los peticionarios presentaron una petición de *certiorari* ante el Tribunal de Circuito de Apelaciones. Mediante sentencia, el foro apelativo también confirmó las destituciones decretadas tras concluir que no existía motivo alguno para revocar el fallo recurrido.

Inconformes, los peticionarios acudieron ante este Tribunal solicitando la revocación de la sentencia emitida por el Tribunal de Circuito de Apelaciones y cuestionando, en síntesis, la apreciación de la prueba que realizara J.A.S.A.P. al decretar la procedencia de la destitución como medida disciplinaria.

Expedimos el recurso presentado y, con el beneficio de la comparecencia de ambas partes, resolvemos según la Sentencia que hemos dictado.

## II

Es principio jurisprudencial trillado que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, en vista de la vasta experiencia y conocimiento que poseen. Los tribunales apelativos deben ser cautelosos al intervenir con la apreciación de la prueba que realicen dichos organismos cuando sus determinaciones se encuentren fundamentadas por una prueba amplia y sustancial. En estos casos, la revisión judicial debe limitarse a determinar si los referidos foros actuaron de manera arbitraria e ilegal, o en una forma tan irrazonable que su actuación constituya un abuso de discreción. *Metropolitana S.E. v. A.R.Pe.*, 138

D.P.R. 200 (1995); *Fuertes y otros v. A.R.Pᴇ.*, 134 D.P.R. 947 (1993); *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866 (1993); *Asoc. Drs. Med. Cui. Salud v. Morales*, 132 D.P.R. 567 (1993); *Viajes Gallardo v. Clavell*, 131 D.P.R. 275 (1992); *Silva v. Adm. Sistemas de Retiro*, 128 D.P.R. 256 (1991).

Luego de un examen ponderado de la petición de *certiorari*, así como de los autos ante nos, resulta imposible e injusto concluir que J.A.S.A.P. abusara de su discreción o que su actuación fuese irrazonable. Por el contrario, su decisión se encuentra fundamentada por una prueba amplia y sustancial, por lo que no existe una base racional para que este Tribunal intervenga en este caso.

Según surge claramente del expediente administrativo, en el caso de autos los peticionarios llevaron a cabo un paro huelgario que ya el Tribunal de Primera Instancia había decretado ilegal.([1]) Como es sabido, el derecho constitucional a la negociación colectiva y a la huelga sólo se extiende a los empleados de patronos privados y a los de agencias e instrumentalidades del Gobierno que funcionan como negocios privados. Art. II, Secs. 17 y 18, Const. E.L.A., L.P.R.A., Tomo 1. Incluso, como bien sostuvo J.A.S.A.P., los peticionarios ya habían sido amonestados por realizar el primer paro huelgario y aún así, conscientes de que podrían ser sancionados nuevamente, reincidieron en su proceder.

Por último, las determinaciones de hecho de la oficial examinadora, las cuales fueron adoptadas por J.A.S.A.P. en su resolución, son claras respecto a la forma y manera en que se afectaron los servicios del Municipio como consecuencia directa del paro huelgario. Ante este cuadro de circunstancias, no erró J.A.S.A.P. al sostener que la acción de destituir a los aquí peticionarios estaba dentro del marco de acción legal permisible al Municipio. De otra parte, de-

---

([1]) Sentencia de *Injunction* de 2 de diciembre de 1993 emitida por el Tribunal de Primera Instancia, Sala Superior de Aibonito (Hon. José Bruno Cortés Trigo, Juez), en el caso *Municipio de Comerío v. Unión Bonafide*, Caso Civil Núm. B-PE-93-0023.

jar sin efecto las destituciones decretadas en el caso de autos tendría el efecto de fomentar paros o huelgas ilegales de empleados de gobierno que ocasionarían daños al interés del pueblo, bajo la expectativa de que si son destituidos por tales acciones ilegales siempre pueden obtener una sanción disciplinaria menor.

Por todo lo expuesto anteriormente, expresamos nuestra conformidad con la Sentencia que hemos dictado que confirma la emitida por el Tribunal de Circuito de Apelaciones.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une el Juez Asociado Señor Hernández Denton.

Es menester narrar en detalle los hechos precisos del caso de autos para que se entienda por qué estimo *incorrecto* y *muy injusto* el dictamen de la mayoría.

I

A principios de julio de 1993, un grupo de empleados regulares *de carrera* de varias dependencias del Municipio de Comerío (en adelante el Municipio), y otros empleados, realizaron un breve paro laboral de un (1) día en contra de la administración municipal. Dicho paro se llevó a cabo por diversos motivos. Por un lado, se protestaba por el despido de más de cuarenta y ocho (48) empleados transitorios que pertenecían al Partido Popular Democrático y quienes habían sido sustituidos en sus cargos por empleados afiliados al Partido Nuevo Progresista. Por otro lado, el paro respondía también al reclamo de mejores condiciones de empleo. En particular, se apuntaba a la tensión que existía en el Departamento de Obras Públicas Municipal, en el cual el Supervisor portaba un arma de fuego en el área de trabajo

y hacía alarde de ello. Los empleados de carrera exigían que se les respetara en su trabajo como profesionales.

El paro dio lugar a que se llegase a un acuerdo, entre los representantes del Alcalde de Comerío (en adelante el Alcalde) y los representantes de los empleados, de dialogar sobre los problemas planteados por estos últimos. Los empleados manifestantes fueron amonestados por su acción y se les descontó de su sueldo el día que estuvieron en el paro.

Luego del paro, en agosto de 1993, conforme al acuerdo antes mencionado, se celebró una reunión entre los representantes del Alcalde y los de los empleados. Los últimos presentaron unos reclamos laborales, y los representantes del Alcalde acordaron que los considerarían para decidir si podían ser acogidos. Se celebró una segunda reunión, pero no se llegó a acuerdo alguno, quedando pendiente el asunto para una tercera reunión, la que nunca llegó a realizarse. El Alcalde no estuvo presente en ninguna de las dos reuniones aludidas.

Como el diálogo iniciado no había dado frutos y se había estancado, los empleados decidieron que no les quedaba otra alternativa que recurrir de nuevo al paro. El segundo paro comenzó el 12 de noviembre de 1993. Los manifestantes llegaron a la Alcaldía a eso de las 11:00 A.M. portando pancartas alusivas a la negativa del Alcalde de dialogar con ellos. Su paro fue apoyado por la Unión Bonafide de Empleados Municipales.

En reacción al paro, el Auditor y el Director de Personal del Municipio procedieron a solicitar informes de asistencia de las distintas dependencias municipales para precisar quiénes se habían unido al mismo. El Alcalde, por su parte, procedió a activar la Defensa Civil para atender los servicios que pudieran afectarse por el paro, tales como el recogido de basura y la provisión de agua potable a sectores del Municipio que la necesitaban.

El paro duró tres días. Concluido éste, el Alcalde destituyó a veinticuatro empleados que se identificaron como participantes en dicho paro. A otros, quienes no fueron identificados como participantes en el paro pero que faltaron al trabajo en esos días, se les descontó la ausencia de su sueldo.

Los destituidos apelaron ante la Junta de Apelaciones del Sistema de Administración de Personal (en adelante J.A.S.A.P.) y alegaron que su despido fue debido a motivaciones políticas. Se adujo que todos los manifestantes destituidos eran afiliados al Partido Popular Democrático.

J.A.S.A.P. confirmó los despidos. Resolvió que el paro era ilegal y que, como sus participantes habían sido amonestados ya una vez por dicha conducta, procedía en esta ocasión la destitución.

El Tribunal de Primera Instancia declaró no ha lugar la solicitud de revisión de los destituidos. El Tribunal de Circuito de Apelaciones igualmente denegó el auto de *certiorari* solicitado por los empleados en cuestión. Inconforme con este resultado, acudieron ante nos y alegaron, entre otros, la comisión del error siguiente:

> (b) Erró el Tribunal al concluir que "la medida tomada de destituir a los peticionarios, aunque la más severa, [no fue desproporcionada] y se justificaba bajo las circunstancias de este caso".

El 12 de julio de 1996 expedimos el recurso solicitado. La parte recurrida presentó su alegato el 19 de agosto de 1996.

## II

Como se sabe, el derecho constitucional a la negociación colectiva y a la huelga sólo se extiende a los empleados de patronos privados y a los de agencias e instrumentalidades del Gobierno que funcionan como negocios privados. Art.

II, Secs. 17 y 18, Const. E.L.A., L.P.R.A., Tomo 1. No ampara a los empleados de los municipios, ya que evidentemente éstos no son una agencia o instrumentalidad del Gobierno que opere como negocio privado. Por razón de lo anterior, el paro en que participaron los peticionarios en noviembre de 1993 no era una actividad concertada protegida por ley.

Ahora bien, cabe preguntarse si bajo las circunstancias de este caso estaba justificada una medida tan severa como la destitución. Es norma reiterada de este Tribunal que la destitución de un empleado público "es una medida drástica", un "castigo extremo", que no se justifica cuando la falta cometida por el empleado es sólo "reprobable". Procede únicamente cuando la falta del empleado público "constituy[a] tal conducta desordenada", o sea "de tal gravedad como para justificar su destitución". Así, pues, procede cuando el empleado público incurre en un "abandono de servicio *de carácter vicioso*". (Énfasis suplido.) *Rodrigo v. Tribunal Superior*, 101 D.P.R. 151, 167–168 (1973); *Lebrón v. Junta de Personal*, 100 D.P.R. 164 (1971). Véase, además, *Srio. de Instrucción v. Quiñones Díaz*, 108 D.P.R. 344 (1979).

En el caso de autos, la actuación de los empleados destituidos, si bien era reprobable, ya que afectó la prestación de servicios municipales, *no fue tan extrema como para justificar el castigo drástico de la destitución*. Nótese que los empleados destituidos tenían agravios y reclamos legítimos que no fueron atendidos adecuadamente. El Alcalde no había cumplido con su obligación de prestar debida atención a los planteamientos y a las quejas de estos empleados y a mantener un clima positivo de trabajo conforme lo provisto en la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 y en la Ley de Personal del Servicio Público de Puerto Rico, 21 L.P.R.A. sec. 4109 y 3 L.P.R.A. sec. 1356, respectivamente. Nótese, además, *que el paro fue breve* y que ocurrió en el

*contexto de una pugna de carácter político*, en las cuales el celo partidista tiende a exacerbarse y a abrir las puertas para el discrimen solapado. Finalmente, debe tomarse en cuenta también que los despedidos eran empleados regulares de carrera, algunos de los cuales tenían muchos años de servicio *y estaban próximos a jubilarse.*

En vista de las particulares circunstancias antes reseñadas, es *injusto* privar a los peticionarios de su empleo, como lo hizo el Alcalde con estos opositores de otro partido. La única actuación, que argüiblemente podría justificar un castigo tan drástico y severo como el que se impuso en este caso, sería la realización de actos violentos por los destituidos, *pero ello no ocurrió aquí.* Conforme los hallazgos de la propia J.A.S.A.P., durante el paro supuestamente se profirieron palabras soeces e incluso se lanzó una piedra que le ocasionó daños a un camión de la Defensa Civil. *Pero tales actos, asumiendo que puedan catalogarse como "violentos", no se les adjudicaron específicamente a ninguno de los destituidos.* No hay nada en las determinaciones de J.A.S.A.P. que impute un acto de violencia a alguno de los despedidos. La determinación de J.A.S.A.P. se basó *únicamente* en que los peticionarios participaron en un paro, por lo que la aplicación aquí de la sanción de despido es claramente extrema, injusta y contraria a la norma que este Tribunal ha sostenido reiteradamente.

En este caso existían medidas disciplinarias más razonables, como la reducción salarial por los días de ausencia y posiblemente alguna suspensión temporal breve, en vista de que era la segunda vez que algunos de estos empleados iban a un paro. Lo que no procedía era la destitución.

Por las razones expuestas, yo revocaría, dejaría sin efecto la destitución de los peticionarios y devolvería el caso a J.A.S.A.P. para que determine una sanción conforme a lo antes señalado.