Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CONCILIO DE SALUD INTEGRAL DE LOÍZA<br>Apelante<br><br>V.<br><br>UNIDAD LABORAL DE ENFERMERAS(OS) Y EMPLEADOS DE LA SALUD (ULEES) UNIDADES A-B-C-D<br>Apelada | KLAN202300918 | Recurso de apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2022CV03851<br><br>Sobre:<br>Revisión de Laudo |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de diciembre de 2023.

Comparece ante nosotros el Concilio de Salud Integral de Loíza Inc. (en adelante CSILO o parte peticionaria), y solicita que revisemos una Sentencia del Tribunal de Primera Instancia Sala Superior de San Juan (TPI), que a su vez confirmó un Laudo de Arbitraje emitido el 10 de mayo de 2022.[1] Por estar conformes con la determinación tomada por el TPI, al no intervenir con el referido Laudo, adelantamos que confirmamos el Proceder del TPI. Veamos los hechos que dieron paso a la controversia y su tracto procesal.

-I-

La controversia que tenemos ante nuestra consideración tiene su origen en un Laudo de Arbitraje emitido por la Árbitro Elizabeth Irizarry Romero, del Negociado de Conciliación y Arbitraje del

---

[1] En vista de que el CSILO solicita la revisión de una Sentencia que declaró no ha lugar la impugnación del laudo presentada por dicha parte, acogemos el recurso de epígrafe como un certiorari, a pesar de haberse intitulado como una "Apelación". Ello, toda vez que el mecanismo para que este Tribunal de Apelaciones revise sentencias emitidas por el foro de primera instancia, que tuvo ante su consideración la impugnación de laudos arbitrales, es el recurso de certiorari. Regla 32 (D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 32 (D); *Hosp. del Maestro v. U.N.T.S.*, 151 D.P.R. 934, 942 (2000). No obstante, preservamos la designación alfanumérica original del recurso.

Departamento del Trabajo y Recursos Humanos, Oficina de San Juan. En el referido Laudo, la Árbitra determinó que no estaba dentro de sus funciones determinar la legalidad de lo negociado y acordado por el CSILO y la Unidad Laboral de Enfermeros y Empleados de la Salud (en adelante ULEES o parte recurrida) en un convenio colectivo.[2]

A esos fines, la Árbitra consideró que, en sus funciones de resolver la querella ante su consideración, estaba limitada únicamente a la interpretación y aplicación de las cláusulas contractuales acordadas por las partes. En base a ello, la Árbitra resolvió que el CSILO violó lo pactado por las partes en el Artículo XXVI del Convenio Colectivo.[3] La Árbitra entendió que el CSILO violentó el convenio cuando dejó sin efecto el beneficio a los empleados que constaba en no cobrarles deducibles cuando utilizaran las facilidades del CSILO. Por ello, la Árbitra ordenó el reembolso del dinero que los empleados pagaron por concepto de deducible cuando utilizaron las facilidades del CSILO durante la vigencia del Convenio Colectivo en controversia. Por no estar de acuerdo con el Laudo emitido por la Árbitra, el 4 de octubre de 2023, el CSLO compareció ante el TPI en recurso de Revisión Judicial de Laudo de Arbitraje. El TPI emitió una Sentencia en donde resolvió que la determinación tomada en el referido Laudo no era contraria a derecho y no se cometieron errores que ameritaran modificar o revocar el referido Laudo. [4]

El Convenio Colectivo sobre el cual la Unión basa la reclamación es el que tuvo vigencia desde el 1 de agosto de 2012 al 1 de agosto de 2016.[5] El Art. XXVI de ese Convenio, que trataba sobre el Plan Médico, leía:

---

[2] Véase Apéndice 1, págs. 1-18.
[3] Véase Apéndice 2 págs. 19-80. (Convenio Colectivo).
[4] Véase Apéndice 18 págs. 350-539. (Sentencia).
[5] Véase Apéndice 2 págs. 19-80. (Convenio Colectivo).

1. El Concilio otorgará una aportación de hasta $113.30 mensual (costo de la cubierta individual) al plan médico a todos los empleados cubiertos por este Convenio.
2. Como un beneficio, el Concilio no cobrará deducibles a los empleados que usen sus facilidades

En base a ese citado Artículo XXVI, el CSILO no le cobraba deducibles a los empleados unionados que utilizaban sus servicios médicos. Sin embargo, el 27 de junio de 2016, el Director Ejecutivo del CSILO envió comunicación informando que, desde esa fecha en adelante, todas las áreas de servicios tenían que asegurar el cobro de los coaseguros según correspondiera a todos los empleados.[6]

El CSILO aseguró que esta decisión fue consecuencia de una comunicación recibida por la Comisionada de Seguros. En esta comunicación el CISLO se enteró que el Departamento de Salud Federal considera ilegal la práctica generalizada de no cobrar los deducibles de un plan médico por entender que ello constituye una violación a las disposiciones sobre "*anti-kickbacks*" en los programas que utilizan fondos federales (Medicare, Medicaid, etc.). Esta interpretación sólo era aplicable a los programas de salud que utilizan fondos federales y no aplicaba a los planes comerciales que no reciban dichos fondos. El CSILO entendió que al ser un centro de salud que utiliza fondos federales, debía comenzar a cobrar los deducibles y coaseguros a sus empleados que recibieran servicios en sus facilidades. Así que, en esencia, es la contención del CSILO que la decisión de romper con lo pactado en el convenio estuvo condicionada por la interpretación de la Oficina del Inspector General de que el mismo era ilegal y violentaba una ley federal.

Luego de esta comunicación, la ULEES se presentó ante el Negociado de conciliación y Arbitraje como parte del Procedimiento de Quejas y Agravios que provee el Convenio Colectivo aplicable del

---

[6] (Véase Apéndice 3, pág. 81 (Comunicación del Director del CSILO para anular el convenio).

CSILO. Las partes sometieron a la Árbitra el proyecto de sumisión, el cual lee:

> "Que la Honorable Árbitra decida conforme al Artículo XXVI del convenio colectivo que estuvo vigente de 1 de agosto de 2012 a 1 de agosto de 2016 y la práctica pasada si los unionados tenían o no derecho que como parte de los beneficios del médico que le provee el patrono a que no se le cobrara deducible.

La Árbitra concedió término a las partes para que sometieran sus respectivos memoriales y/o alegatos. El 17 de enero de 2022, la ULEES sometió ante la consideración del Negociado su Memorial en donde alegó que el CSILO violentó el Convenio Colectivo que estuvo vigente del 1 de agosto de 2012 al 1 de agosto de 2016, al haber dejado sin efecto desde el 27 de junio de 2016, el beneficio de los unionados de ser eximidos del pago de deducibles y coaseguros por la atención médica que recibían como pacientes del CSILO. En respuesta, el CSILO sometió su Memorial en donde alegó que el beneficio en controversia se dejó sin efecto debido a que luego de haberlo consultado con las autoridades pertinentes, se determinó que el mismo era ilegal. Por tanto, a pesar de que ese beneficio se incluyó como parte del Convenio Colectivo que estuvo vigente del 1 de agosto de 2012 al 1 de agosto de 2016, el mismo advino a ser nulo al tratarse de un beneficio ilegal y que podía poner en riesgo los fondos federales que recibe el CSILO para sus operaciones.

El 10 de mayo de 2022, la Árbitra emitió su Laudo.[7] En este, expresó sus funciones estaban limitadas a determinar la legalidad de lo negociado y acordado por las partes en su convenio colectivo. A esos fines, resolvió que, en sus funciones de resolver determinada querella, estaba limitada únicamente a la interpretación y aplicación de las cláusulas contractuales acordadas por las partes. En base a ello, la resolvió que el CSILO violó lo pactado por las partes en el Artículo XXVI del Convenio Colectivo, al dejar sin efecto el beneficio

---

[7] Véase nota al calce 2, *supra.*

que tenían los, empleados de que no se les cobrara deducible cuando utilizaban las facilidades del CSILO. Debido a ello, ordenó el reembolso del dinero pagado, por concepto de deducible, a los empleados que usaron las facilidades del CSILO, durante la vigencia del Convenio Colectivo.

No conformes con la decisión de la Árbitra, 14 de mayo de 2022, el CSILO presentó un recurso de revisión judicial ante el TPI.[8] El 4 de octubre de 2023, el TPI dictó Sentencia en la que resolvió que la determinación emitida en el laudo no era contraria a derecho y que no encontró que la Árbitra cometiera errores que justificaran una modificación o revocación del mismo. El TPI, al interpretar la opinión de la Comisionada de Seguros, resolvió que la referida prohibición es para los programas de, salud y no para los centros de servicios de salud y que el CSILO no es un programa de salud. Por ello, concluye el TPI que la opinión de la Comisionada en la cual prohíbe la práctica generalizada de no cobrar deducibles de un plan médico por constituir una violación a las disposiciones "*anti kickbacks*" no es aplicable el CSILO. No conforme con esta decisión, el CSILO comparece ante nosotros mediante recurso de apelación señalando los siguientes errores:

A) Incurrió en error el TPI al confirmar un Laudo que no es conforme a Derecho.

B) Incurrió en error el TPI al no resolver que lo pactado por las partes en la cláusula XXXVI del Convenio Colectivo es ilegal de conformidad a la Ley federal "*anti-kickback*" y a la Opinión emitida por la Comisionada de Seguros.

-II-

-A-

El arbitraje se ha definido como el procedimiento para resolver controversias, sometiéndolas a un árbitro o a un cuerpo de árbitros, para luego de considerar las pruebas, emitir su laudo. *Aquino González v. A.E.E.L.A.*, 182 DPR 1, 19 (2011). El propósito del

---

[8] Véase Apéndice 16 págs. 293-304 (Recurso de Revisión de Laudo de Arbitraje).

arbitraje es que las partes presenten sus controversias ante un ente neutral, ya sea ante un árbitro o ante un panel de árbitros, que posean autoridad para adjudicar e imponer una decisión a las partes. *Aquino González v. A.E.E.L.A., supra.* Algunas de las ventajas de someter una controversia o reclamación al procedimiento de arbitraje son: la pericia del ente neutral respecto a la materia objeto de disputa, la privacidad e informalidad en los procedimientos, los bajos costos del proceso y la rapidez en la toma de decisiones. *Id.,* en las págs. 19-20. Las partes en un contrato pueden anticipar las potenciales controversias futuras derivadas de su relación contractual y obligarse a someterlas ante un procedimiento de arbitraje. *H.R. Inc., v. Vissepó & Díaz Constr.*, 190 DPR 597, 605 (2014). Por esto, el arbitraje es una figura jurídica inherentemente contractual y es exigible solamente cuando las partes así lo hayan pactado. *Id.* En lo pertinente al arbitraje, nuestro Tribunal Supremo ha determinado que las partes que voluntariamente se someten a un procedimiento de arbitraje deben agotar los remedios contractuales antes de acudir a los tribunales, salvo que exista justa causa para obviarlos. *Id.* en la pág. 606. De esta forma, las partes acuerdan voluntariamente limitar la jurisdicción de los tribunales sobre su persona para dar paso al proceso de arbitraje. *Id.*

A esos efectos, se ha dicho que un laudo de arbitraje, en general, goza de una naturaleza similar a la de una sentencia judicial. *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 DPR 348, 354 (1985). Dicho de otra manera, el laudo de arbitraje, "no es ni un contrato ni una sentencia, pero disfruta de la naturaleza de ambos". *C.O.P.R. v. S.P.U.,* 181 DPR 299, 328 (2011). De igual modo, la función del árbitro se ha semejado a la ejercida por una sala sentenciadora de primera instancia. *U.I.L. de Ponce v. Dest. Serrallés, Inc., supra.* "Un acuerdo en un [contrato] para utilizar el arbitraje como mecanismo de ajuste de controversias crea un foro

sustituto a los tribunales de justicia. En efecto, ello representa una sustitución del juez por el árbitro." *Condado Plaza v. Asoc. Emp. Casinos* P.R., 149 DPR 347, 352 (1999). Nuestro Tribunal Supremo ha reiterado que "[u]na vez se somete la disputa ante un árbitro para su resolución, las partes, en efecto, sustituyen a las cortes por el árbitro para la determinación de todas las cuestiones de hecho y de derecho sustantivo y renuncian al derecho a litigar tales cuestiones ante los tribunales. *C.O.P.R. v. S.P.U., supra,* en la pág. 326. Claro está, el convenio de sumisión delimitará la facultad decisional del árbitro y su esfera de acción. Es decir, so pena de nulidad, el árbitro ni el laudo que resulte pueden exceder los poderes delegados. *Constructora Estelar v. Aut. Edif. Púb.* 156 DPR 197 (2002).

En Puerto Rico existe una vigorosa política pública a favor del arbitraje y está motivada por el interés del Estado de facilitar la solución de disputas por una vía más rápida, flexible y menos onerosa que los tribunales para la resolución de controversias que emanan de la relación contractual o laboral entre las partes. *H.R. Inc., v. Vissepó & Díaz Constrc., supra.* En relación con la intervención revisora de los tribunales, el Artículo 22 de la Ley de Arbitraje Comercial en Puerto Rico Ley Núm. 376 de 8 de mayo de 1951 (Ley de Arbitraje), regula el proceso de revocación del laudo:

> En cualquiera de los casos siguientes el tribunal podrá a solicitud de cualquiera de las partes y previo aviso y vista, dictar orden revocando el laudo:
>
> (a) Cuando se obtuvo mediante corrupción, fraude u otro medio indebido.
> (b) Cuando hubo parcialidad o corrupción evidente de los árbitros o cualquiera de ellos.
> (c) Cuando los árbitros actuaren erróneamente al rehusar posponer la vista luego de mostrarse causa justificada para ello, o al rehusar oír evidencia pertinente y material a la controversia, o cuando incurrieren en cualquier error que perjudique los derechos de cualquiera de las partes.
> (d) Cuando los árbitros se extendieren en sus funciones o cuando el laudo emitido no resolviera en forma final y definitiva la controversia sometida.
> (e) Si no hubo sumisión o convenio de arbitraje válido y el procedimiento se inició sin diligenciar la notificación de intención de arbitrar, según se dispone en el Artículo 11,

> o la moción para obligar el arbitraje, según se dispone
> en el inciso 1 del Artículo 4.

En el caso en que se revoque un laudo, el tribunal podrá a su discreción, ordenar una nueva vista, ante los mismos árbitros, o ante árbitros nuevos a seleccionarse en la forma que se disponga en el convenio para la selección de los árbitros originales, y cualquier disposición que limite el término dentro del cual los árbitros podrán llegar a una decisión se considerará aplicable al nuevo arbitraje y a comenzar desde la fecha de la orden del tribunal. Véase el Artículo 22 de la Ley de Arbitraje Comercial en Puerto Rico *supra*. Por otro lado, el Artículo 23, de la Ley de Arbitraje Comercial, establece todo lo relacionado a la corrección o modificación del laudo en un proceso de revisión judicial que en cualquiera de los casos siguientes el tribunal deberá, previa notificación y vista, y a solicitud de cualquiera de las partes, dictar una orden modificando o corrigiendo el laudo:

> (a) Cuando hubo evidente error de cálculo en cuanto a las cifras, o evidente error en la descripción de cualquier persona, cosa o propiedad.
> (b) Cuando los árbitros hayan resuelto sobre materia no sometida a ellos.
> (c) Cuando el laudo sea imperfecto en materia de forma, sin afectar los méritos de la controversia.

Estas normas de autolimitación judicial en la revisión de laudos conllevan que los tribunales no lleguen a "considerar los méritos de un laudo, independientemente de que, de haber sido la controversia inicialmente resuelta a nivel judicial, la determinación final hubiese sido otra." *Aut. Puertos v. HEO, supra*, en la pág. 427. De manera que, alegados errores en la apreciación de la prueba o en la aplicación de las normas de derecho en laudos finales, no deben ser objeto de revisión por los tribunales. *Febus y otros. v. MARPE Const. Corp.*, 135 DPR 206, 217 (1994); C.*R.U.V. v. Hampton Dev.*, 112 DPR 59, 64 (1982); *Rivera v. Samaritano & Co., Inc.*, 108 DPR 604, 608-609 (1979). Las determinaciones de un árbitro, en cuanto a los hechos y en cuanto a derecho, son finales y no revisables por

los tribunales, aunque haya mediado error por parte de éstos en la apreciación de los hechos y el derecho aplicable, y aun cuando el tribunal hubiese llegado a una conclusión distinta. *Febus y otros. v. MARPE Const. Corp., supra*, en las págs. 217-218. Por consiguiente, la revisión judicial de los laudos emitidos en un procedimiento de arbitraje se limitará a las instancias en las cuales quede demostrada la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las cuestiones en disputa o que el laudo sea contrario a la política pública. *Aut. Puertos v. HEO, supra*. Ahora bien, esta norma de autolimitación no se aplica en esos extremos a los casos en que las partes pactan que los laudos de arbitraje se emitan conforme a derecho. En esas instancias, el árbitro debe velar celosamente por que se cumplan las reglas jurídicas vigentes en nuestro ordenamiento legal y debe rendir su decisión según las doctrinas legales prevalecientes. Depto. *Educ. v. Díaz Maldonado*, 108 DPR 344, (1979). Los remedios concedidos deben estar adheridos a nuestro andamiaje jurídico. *Depto. Educ. v. Díaz Maldonado, supra*, en las págs. 326-327**. En consecuencia, la revisión judicial será más incisiva, por lo cual "los tribunales podrán corregir errores jurídicos en referencia al derecho aplicable."** (Énfasis nuestro) *Aut. Puertos v. HEO, supra*. En la revisión de laudos con arreglo a derecho, el tribunal tiene la facultad para revisar los méritos jurídicos del laudo. *Constructora Estelar v. Aut. Edif. Pub., supra,* en la pág. 33. En estos casos la revisión judicial es análoga a la de las decisiones administrativas. *Aut. Puertos v. HEO, supra,* en la pág. 446. Por tal razón, las determinaciones de hechos de los laudos de arbitraje conforme a derecho pueden ser revisadas cuando no están sostenidas por evidencia sustancial en el expediente. *Constructora Estelar v. Aut. Edif. Pub., supra; U.T.I.C.E. v. C.E.A.T.*, 147 DPR 522, 528 (1999). Asimismo, tales determinaciones de hechos gozan de

gran deferencia. *Condado Plaza v. Asoc. Emp. Casinos P.R.*, *supra*, en la pág. 352. Nuestro Tribunal Supremo ha sido enfático al sostener que "el tribunal de instancia no debe inclinarse fácilmente a decretar la nulidad del laudo, a menos que efectivamente el mismo no haya resuelto la controversia con arreglo a derecho, según lo pactaran las partes." *Constructora Estelar v. Aut. Edif. Pub.*, *supra*, en la pág. 34.

-B-

Nuestro Código Civil vigente establece el contrato como fuente de obligación. En un contrato, las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público. CÓD. CIV. PR art. 1232, 31 LPRA § 5141 (2020 & Supl. 2023). Este es el llamado principio de la autonomía o libertad contractual. *Id.* Es norma establecida en nuestro ordenamiento jurídico que lo acordado en los contratos tiene fuerza de ley entra las partes. CÓD. CIV. PR art. 1233, 31 LPRA § 5141 (2020 & Supl. 2023). Los contratos en Puerto Rico quedan perfeccionados desde que las partes manifiestan su consentimiento sobre el objeto y la causa. CÓD. CIV. PR art. 1238, 31 LPRA § 5141 (2020 & Supl. 2023). Ahora bien, existe consentimiento cuando están presentes la oferta, junto con la aceptación cuando el oferente recibe la aceptación. *Id.* Nuestro Código Civil vigente también establece que el negocio jurídico debe tener un fin lícito en atención a las circunstancias existentes al tiempo de su celebración y al de su ejecución. CÓD. CIV. PR art. 270, 31 LPRA § 5141 (2020 & Supl. 2023). Por tal razón no es lícito el fin contrario a la ley, a la moral o al orden público, o lesivo de derechos de terceros. *Id.*

La teoría contractual se funda sobre la base de la autonomía de la voluntad y la libertad que tienen las partes contratantes de establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral,

ni al orden público. *BPPR v. Sucn. Talavera*, 174 DPR 686, 693, (2008) Juris P.R. 152 (2008). Véanse, además: J*arra Corp. v. Axxis Corp.*, 155 DPR 764, 772, (2001). Por tanto, en nuestro ordenamiento jurídico impera la libertad de contratación. *Id.* Ello consiste en que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente. *Id.* Ahora bien, la autonomía que brinda la libertad de contratación tiene límites pues esta no puede ejercerse abusivamente ni en oposición a una disposición legal. Esto es compatible con el principio de que los derechos son renunciables, siempre que la ley no prohíba su renuncia o no sea en perjuicio de tercero. Véanse los Arts. 4 y 1207 del Código Civil de 1930 (derogado), 31 LPRA secs. 4 y 3372. Independientemente del tipo de contrato y de la importancia que este merezca para las partes, si resulta contrario a las leyes, la moral o al orden público, es nulo y, por lo tanto, inexistente. *De Jesús González v. A.C.*, 148 DPR 255, 264 (1999).

El concepto de orden público puede definirse como el conjunto de valores eminentes que guían la existencia y bienestar de una sociedad, que ampara un interés social dominante por los derechos que tiende a proteger. *Consejo de Titulares v. C.R.U.V.*, 132 DPR 707 (1993); *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991); *Hernández v. Méndez & Assoc. Dev. Corp.*, 105 DPR 149, 153-154 (1976). Por eso, es un medio para conseguir un balance entre la autonomía de la voluntad y la imprescindible protección del bienestar común. *Hernández v. Méndez & Assoc. Dev. Corp.*, *supra*, en la pág. 266. A tales efectos, debido a que este podría ser un concepto difuso que no se limita a la ley vigente, los tribunales deben darle concreción en cada caso. *Consejo de Titulares v. C.R.U.V., supra.*

El principio de la buena fe permea todo el ordenamiento. *Velilla v. Pueblo Supermarkets*, 111 DPR 585 (1981). Tanto el deudor como el acreedor deben actuar de buena fe en el cumplimiento de la

obligación. CÓD. CIV. PR art. 1062, 31 LPRA § 5141 (2020 & Supl. 2023). A falta de previsión contractual, o en caso de ineficacia de alguna de sus cláusulas, el contrato se complementa con: (a) las normas imperativas; (b) las normas supletorias; (c) los usos del lugar de celebración del contrato; y (d) la buena fe. CÓD. CIV. PR art. 1236, 31 LPRA § 5141 (2020 & Supl. 2023). La equivalencia de las prestaciones es una figura que el Supremo ha ubicado bajo las exigencias de la buena fe contractual. *Utility Consulting Services v. Municipio de San Juan,* 115 DPR 89 (1984). Nuestro Tribunal Supremo ha expresado que la autonomía de la voluntad que establece el Código Civil está estrechamente entrelazada con el principio de la buena fe contractual. *Banco Popular v. Scn. Talavera, supra.* En primer lugar, la buena fe obliga más allá de lo expresamente pactado, para abarcar todas las consecuencias que por la naturaleza del contrato sean conformes a la buena fe, al uso y a la ley. *Banco Popular v. Scn. Talavera, supra.* Es importante destacar que la buena fe contractual no se manifiesta tan sólo al comienzo del contrato o en la fase negocial, sino que está presente mientras dure la relación contractual. Asimismo, las partes deben adoptar un comportamiento leal en toda fase previa a la constitución de tales relaciones deben también comportarse lealmente en el desenvolvimiento de las relaciones jurídicas ya constituidas entre ellos. *Véase, además,* Michel J. Godreau Robles, Lealtad y buena fe contractual, 58 REV. JUR. UPR 367, 422 (1989).

-C-

En nuestro ordenamiento jurídico existe la norma de que a nadie le es lícito ir contra sus propios actos. *Alonso v. UNDARE,* Inc., 199 DPR 32 (2017). Esta norma tiene fundamento y raíz en el principio general de Derecho que ordena proceder de buena fe en la vida jurídica. *Id.* La eficacia de la doctrina y su fuerza vinculante tienen vida y efecto propios, que van en protección de la confianza

depositada en la apariencia, que es por extensión protección de un interés social o la consecución de un ideal de justicia. *Id.* Así pues, la conducta contradictoria no tiene lugar en el campo del Derecho y debe ser impedida. *Id.* Al determinar la aplicabilidad de la doctrina, nuestro Tribunal Supremo ha expresado que los elementos constitutivos para la aplicación de la norma jurídica de que nadie puede venir contra sus propios actos pueden resumirse así: (a) Una conducta determinada de un sujeto, (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás, y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. *Alonso v. UNDARE, Inc., supra.*

-D-

El certiorari es un recurso extraordinario cuya característica se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391 (2021); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307 (2012). Este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83 (2008). En los procesos civiles, la expedición de un auto de certiorari se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *McNeil Healthcare v. Mun. Las Piedras I, supra*; *Scotiabank v. ZAF Corp et al.*, 202 DPR 478 (2019). La mencionada Regla dispone que solo se expedirá un recurso de certiorari cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, injunctions de la Regla 57o de la denegatoria de una moción de carácter dispositivo." *800*

*Ponce de León v. AIJ, supra.* Como se indicara previamente, el mecanismo para que este Tribunal de Apelaciones revise sentencias emitidas por el foro de primera instancia, en las que dicho Tribunal tuvo ante su consideración la impugnación de laudos arbitrales, es el recurso de certiorari. Regla 32 (D) del Reglamento del Tribunal de Apelaciones, *supra*; *Hosp. del Maestro v. U.N.T.S.*, *supra.*

Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

-III-

Luego de haber expuesto y delimitado el derecho pertinente a la controversia en cuestión, solo nos resta aplicarlas a nuestra situación de hechos para disponer de la misma. En primer término, según discutimos en la parte expositiva de esta sentencia, existe en Puerto Rico una gran deferencia a los Laudos emitidos en un proceso de Arbitraje. Por esta razón, son contadas las excepciones en las que un Tribunal debe intervenir y sustituir la decisión de un árbitro. Tal y como expusimos, cuando unas partes se someten a un

proceso de arbitraje y en este se pacta que la decisión que tome el árbitro sea conforme a derecho, la jurisdicción del tribunal para revisar el referido laudo será más amplia. Del expediente ante nuestra consideración se desprende que el pacto de arbitraje entre la parte peticionaria y la parte recurrida exigía que los laudos emitidos se emitieran conforme a derecho.[9]

Aclarado el asunto anterior, consideremos el primer error planteado por la parte peticionaria. En el primer error la parte peticionaria señaló que el TPI incurrió en error el TPI al confirmar un Laudo que no es conforme a Derecho. No estamos de acuerdo. El trabajo realizado por la Árbitra Elizabeth Irizarry Romero fue correcto al declarar que la parte peticionaria o CSILO incumplió lo acordado en el convenio colectivo que pactó con sus empleados. Los artículos de nuestro Código Civil vigente relacionado a las obligaciones y contratos y toda nuestra jurisprudencia interpretativa en esa materia nos haría llegar a la misma conclusión a la que llego la Árbitra. La parte peticionaria había pactado con sus empleados la manera de pagar los servicios médicos en sus facilidades, el cual fue incumplido. Por tal razón les asiste a los miembros de la parte recurrida un reembolso por lo que les fue cobrado en contravención a referido convenio. Por tanto, no estamos hasta este momento ante un Laudo contrario a derecho.

Ahora bien, con solo atender los asuntos anteriores no disponemos totalmente del asunto ante nuestra consideración. Como adelantamos en los hechos, es la contención de la parte peticionaria CSILO, que se declare nulo e inexistente el convenio bajo el presupuesto de que el mismo violenta la ley. En particular, en su segundo señalamiento de error la peticionaria señala que incurrió en error el TPI al no resolver que lo pactado por las partes

---

[9] Véase apéndice 2 en la página 35. (Artículo VIII del Convenio Colectivo).

en la cláusula XXXVI del Convenio Colectivo es ilegal de conformidad a la Ley federal "*anti-kickback*" y a la Opinión emitida por la Comisionada de Seguros. Por lo tanto, mediante este señalamiento de error pretenden evitar responder por el incumplimiento del convenio, amparándose en que según una opinión de la Comisionada de Seguros lo pactado es ilegal y por lo tanto nulo el contrato. Tampoco podemos avalar esta pretensión de la parte peticionaria. Al igual que el TPI, entendemos que la opinión de la Comisionada en la cual prohíbe la práctica generalizada de no cobrar deducibles de un plan médico por constituir una violación a las disposiciones "*anti kickbacks*" no es aplicable el CSILO.[10] La sección 1320 a-7b del 47 USC aplica la referida prohibición únicamente a los programas de salud federal y no a sus proveedores. El CSILO es un proveedor, por lo que la referida prohibición no les aplica. Con esto dicho, podemos concluir que efectivamente no estamos ante un Laudo contrario a derecho.

No estamos ante un pacto que viole la ley ni tampoco ante un contrato que violente la moral o el orden público. Por tanto, el convenio entre CSILO y sus empleados es válido y debe cumplirse. Así las cosas, concluimos que el TPI descargó adecuadamente su responsabilidad al examinar la controversia ante su consideración y que no está presente circunstancia alguna que amerite nuestra intervención con la determinación de dicho Foro.

-IV-

Por los fundamentos que anteceden, expedimos el auto y confirmamos la Sentencia apelada.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[10] Véase apéndice 18 en la pagina 319. (Sentencia del TPI).